# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# DIVISION

| | |
|---|---|
| JULIE O'SHAUGNESSY, §<br>INDIVIDUALLY AND ON BEHALF OF §<br>ALL OTHERS SIMILARLY SITUATED, §<br>    *Plaintiff* §<br>§<br>**v.** §<br>§<br>YOUNG LIVING ESSENTIAL OILS, LC §<br>D/B/A YOUNG LIVING ESSENTIAL §<br>OILS, THE YOUNG LIVING §<br>FOUNDATION, INC., MARY YOUNG, §<br>JARED TURNER, BENJAMIN RILEY, §<br>AND CO-CONSPIRATORS, §<br>    *Defendants* § | **Case No. 1:19-CV-412-LY** |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE LEE YEAKEL**
**UNITED STATES DISTRICT JUDGE**

Before this Court are Defendant Young Living Essential Oils, LC's Motion to Compel Arbitration, filed on June 11, 2019 (Dkt. No. 7); The Young Living Foundation, Inc., Mary Young, Jared Turner, and Benjamin Riley's Motion to Compel Arbitration and Joinder in Young Living Essential Oil LC's Motion to Compel Arbitration and Stay Proceedings, also filed on June 11, 2019 (Dkt. No. 8); and related response and reply briefs. On July 2, 2019, the District Court referred the above motion to the undersigned Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I.   BACKGROUND

### A. The Instant Lawsuit

On April 12, 2019, Plaintiff Julie O'Shaughnessy ("Plaintiff"), individually and on behalf of all those similarly situated, filed this lawsuit against Defendants Young Living Essential Oils, LC d/b/a Young Living Essential Oils ("Young Living"), The Young Living Foundation, Inc. (the "Foundation"), Mary Young, Jared Turner, Benjamin Riley, and Jane and John Doe co-conspirators ("Individual Defendants") for damages and other relief under the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961(5), 1962(c), and 1962(d) ("RICO Act").

Plaintiff alleges that "Young Living operates an illegal pyramid scheme created under the guise of selling essential oils for quasi-medicinal purposes." Dkt. No. 1 at ¶ 1. Plaintiff avers that she, and hundreds of thousands of putative class members just like her, paid and lost hundreds (and in some cases thousands) of dollars to become Young Living Essential Rewards enrollees ("Members") based on the promise of financial health (which Young Living calls "abundance") and physical health, all through its brand of essential oils. Plaintiff contends that Young Living falsely represents to its Members that participation in Young Living—which necessarily requires regular monthly payments—will result in spiritual and material riches as long as they continue to solicit additional recruits to become Members of the Young Living family. "In reality," Plaintiff alleges, "Defendants have created nothing more than an unlawful pyramid scheme—the cornerstone of which is Young Living's emphasis on new member recruitment over the sale of products." *Id.* at ¶ 4. Plaintiff contends that Defendants' activities have violated the RICO Act.

### B. The Contractual Provisions at Issue

On May 15, 2015, Plaintiff became a Member of Young Living by enrolling online and electronically signing the "U.S. Member Agreement & Essential Rewards Enrollment Form." *See*

Exh. C to Dkt. No. 7 ("Member Agreement").[1] By signing the Member Agreement, Plaintiff acknowledged: "I have read and agree to be bound by the terms and conditions of the Agreement (which includes this Member Agreement, the Policies and Procedures, and the Compensation Plan)." *Id.* at p. 2. Relevant to the Motion to Compel Arbitration, the Member Agreement contains the following "Jurisdiction and Choice of Law" clause ("Forum Selection Clause"):

> The Agreement will be interpreted and construed in accordance with the laws of the State of Utah applicable to contracts to be performed therein. *Any legal action concerning the Agreement will be brought in the state and federal courts located in Salt Lake City, Utah.* Notwithstanding the foregoing, if applicant resides in Louisiana, applicant may bring an action against YL with jurisdiction and venue as provided by Louisiana law.

*Id.* at p. 3 § 9 (emphasis added).

The Member Agreement also incorporated the Young Living Policies and Procedures ("P&P") and the Compensation Plan. *Id.* at § 5. The P&P contained the following arbitration clause:

> If mediation is unsuccessful, any controversy or claim arising out of or relating to the Agreement, or the breach thereof, will be settled by arbitration.[2] The parties waive all rights to trial by jury or to any court. The arbitration will be filed with, and administered by, the American Arbitration Association ("AAA") or Judicial Arbitration and Mediation Services (JAMS) under their respective rules and procedures.
>
> ***
>
> All arbitration proceedings will be held in Salt Lake City, Utah. There will be one arbitrator selected from the panel that the Alternate Dispute Resolution service provides. . . . The decision of the arbitrator will be final and binding on the parties and may, if necessary, be reduced to a judgment in any court of competent jurisdiction.

Exh. D to Dkt. No. 7 at § 13.2.2 ("Arbitration Clause").

---

[1] Plaintiff also agreed to the 2018 Amended Agreement, which contains the same contractual terms. *See* Dkt. No. 7 at p. 2.

[2] The Parties have agreed to waive the mediation requirement at this time. *See* Dkt. No. 7 at p. 3 n.2; Dkt. No. 10 at p. 4 n.9.

3

On June 25, 2019, Young Living filed the instant Motion to Compel Arbitration, arguing that Plaintiff should be compelled to arbitrate her dispute against Young Living in Salt Lake City, Utah, based on the Arbitration Clause contained in the P&P. Plaintiff disagrees and contends that the Jurisdiction and Choice of Law provision conflicts with and supersedes the Arbitration Clause contained in the P&P. The Foundation, although not a signatory to the agreement, also has filed a Motion to Compel Arbitration waging the same arguments.

## II.     LEGAL STANDARDS

"Under the Federal Arbitration Act [FAA], parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). The FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (internal quotations and citations omitted). Thus, the FAA establishes "a liberal federal policy favoring arbitration agreements" and "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Although there is a strong federal policy favoring arbitration, "this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). Thus, the FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt*, 489 U.S. at 478. "For arbitration is a matter of contract and a party cannot be required to submit

to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt*, 489 U.S. at 478.

### III. ANALYSIS

When considering a motion to compel arbitration, courts apply a two-step framework to determine whether a dispute must be arbitrated. First, the court must determine "whether the parties entered into *any arbitration agreement at all*." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). "This first step is a question of contract formation only—did the parties form a valid agreement to arbitrate some set of claims." *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 2620 (2018). This initial question is for the court. *Kubala*, 830 F.3d at 201; s*ee also 20/20 Commc'ns, Inc. v. Crawford*, 930 F.3d 715, 718 (5th Cir. 2019) ("[I]f parties dispute whether they in fact ever agreed to arbitrate at all, such questions of contract formation are considered "gateway" issues that presumptively must be decided by courts, not arbitrators.") (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010).

If the court finds there is a valid agreement to arbitrate, the court moves on to the second question: whether the claim at issue is covered by the arbitration agreement. *IQ Prods.*, 871 F.3d at 348. While this second question is usually a question for the court, if the arbitration clause contains a valid delegation clause, the court must submit the question of whether the claim falls

within the arbitration agreement to the arbitrator. *Kubala*, 830 F.3d at 202.[3] Here, the Court begins and ends its analysis at step one.

The strong federal policy favoring arbitration does not apply to the initial determination whether there is a valid agreement to arbitrate, as noted above. *Will-Drill*, 352 F.3d at 214. To determine whether there is a valid agreement to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). The Parties agree that Utah law applies in this case. Under Utah law, the formation of a contract requires an offer, an acceptance, and consideration. *Mitchell v. Wells Fargo Bank*, 280 F. Supp. 3d 1261, 1280 (D. Utah 2017). "An offer is a manifestation of willingness to enter into a bargain, and an acceptance is a manifestation of assent to the offer, such that an objective, reasonable person is justified in understanding that a fully enforceable contract has been made." *Id.* (quotations and citations omitted). "Consideration is present when there is an act or promise given in exchange for the other party's promise." *Id.*

In addition, "[i]t is fundamental that a meeting of the minds on the integral features of an agreement is essential to the formation of a contract." *Richard Barton Enters. v. Tsern*, 928 P.2d 368, 373 (Utah 1996). "Thus, a binding contract exists where it can be shown that the parties had a meeting of the minds as to the integral features of the agreement and that the terms are sufficiently definite as to be capable of being enforced." *Mitchell*, 280 F. Supp. 3d at 1280 (internal quotations omitted). The party seeking to compel arbitration has the burden to show that an arbitration agreement exists and applies to the party resisting arbitration. *Id.* at 1272. Ambiguous language is construed against the drafter. *Id.* at 1286.

---

[3] Accordingly, courts only look to whether there is a valid delegation clause if they reach the second step. Because the Court finds that the parties did not enter into a valid arbitration agreement in this case, the Court need not reach the issue of whether there was valid delegation clause.

As noted above, the Forum Selection Clause in this case mandates that "[a]ny legal action concerning the Agreement will be brought in the state and federal courts located in Salt Lake City, Utah,"[4] while the Arbitration Clause provides that "any controversy or claim arising out of or relating to the Agreement, or the breach thereof, will be settled by arbitration."[5] The Court finds that these two provisions irreconcilably conflict and that these conflicting provisions indicate that there was no "meeting of the minds" with respect to arbitration in this case. The conflict between these provisions would not leave the Plaintiff with a definite understanding that she agreed to arbitrate all claims arising out of the Member Agreement. "Where the essential terms of a contract conflict, there can be no agreement." *Mitchell*, 280 F. Supp. 3d at 1286. Accordingly, the Court finds there was no agreement to arbitrate.

Tenth Circuit case law supports this finding. In *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 618 (10th Cir. 2014), the Tenth Circuit addressed conflicting contractual provisions and found that the defendant had failed to carry its burden of showing that an enforceable arbitration agreement existed. There, as here, one of the agreements (the "Operating Agreement") contained an arbitration clause requiring disputes to be litigated before an arbitrator, while the other agreement (the "Subscription Agreement") contained a forum selection clause stating that any dispute arising out of the agreement "shall be adjudicated by a court of competent civil jurisdiction sitting in Denver, Colorado." *Id.* at 610. The Tenth Circuit denied the motion to compel arbitration, finding the following:

> Here, Defendants have failed to carry their burden of showing that an enforceable arbitration agreement exists. First, it is undisputed that the Investment Binder contained conflicting provisions regarding arbitration. While the Operating Agreement provided for arbitration, the Subscription Agreement did not. In our view, the

---

[4] Exh. C to Dkt. No. 7 at § 9.

[5] Exh. D to Dkt. No. 7 at § 13.2.2.

>>documents in the Investment Binder do not demonstrate a meeting of the minds regarding arbitration.

*Id.* at 614; *see also, e.g., Summit Contractors, Inc. v. Legacy Corner, L.L.C.*, 147 F. App'x 798, 802 (10th Cir. 2005) (holding that arbitration clause contained in one agreement did not trump choice of forum clause in another agreement, noting that "the Agreement's choice-of-forum clause is compelling evidence against an intent to arbitrate breaches of the Agreement"); *Applied Energetics Inc. v. Newoak Capital Markets*, 645 F.3d 522, 525-26 (2nd Cir. 2011) (denying motion to compel arbitration where forum selection clause "stands in direct conflict" with arbitration clause); *Ragab v. Howard*, 841 F.3d 1134, 1138 (10th Cir. 2016) (denying motion to compel arbitration where conflicting arbitration provisions indicated that there was no meeting of the minds with respect to arbitration); *Mitchell*, 280 F. Supp. 3d at 1286 (denying motion to compel arbitration where conflicting arbitration provisions indicated that there was no meeting of the minds with respect to arbitration).

Young Living argues that the Arbitration Clause and the Forum Selection Clause can be harmonized because the Forum Selection Clause "concerns only disputes that are **not** subject to arbitration, such as a challenge to the validity of the Arbitration Provision, or enforcement of an arbitration award." Dkt. No. 12 at p. 4. The Forum Selection Clause, however, contains no such limitation; instead, it plainly and unequivocally applies to "[a]ny legal action concerning the Agreement," not just to disputes that are not subject to arbitration. This finding is also supported by the fact that the forum selection clause in the P&P contains clear language limiting the clause to disputes that are not subject to arbitration. *See* Exh. D to Dkt. No. 7 at §13.2.3 ("Jurisdiction and venue of any matter not subject to arbitration will reside in any state or federal court located in Salt Lake City, Utah . . . ."). The absence of such language in the Forum Selection Clause is telling. "The court cannot compel the performance of a contract which the parties did not mutually

8

agree upon." *Pitcher v. Lauritzen*, 423 P.2d 491, 493 (1967). Accordingly, the Court rejects Young Living's argument that the Forum Selection Clause and Arbitration Clause can be harmonized.

There is no integration clause contained in the P&P, furthermore, which would indicate that the Arbitration Clause trumps the Forum Selection Clause. Notably, the Member Agreement, which contains the Forum Selection Clause, does contain an integration clause, which provides:

> The Agreement constitutes the entire agreement between you and Young Living and supersedes all prior agreements; and no other promises, representations, guarantees, or agreements of any kind will be valid unless in writing and signed by both parties.

Exh. C to Dkt. No. 7 at § 12. "Typically, merger clauses are strong evidence that the parties did not intend to include terms not expressly incorporated into the document containing the clause." *Summit Contractors*, 147 F. App'x at 801.

Based on the foregoing, the Court finds that Young Living has failed to demonstrate that Plaintiff entered into a binding arbitration agreement in this case. Because the Arbitration Clause and the Forum Selection Clause conflict, there was no "meeting of the minds" and, therefore, no agreement to arbitrate. Young Living "cannot overcome the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62–63 (1995). Young Living drafted ambiguous and conflicting agreements, and "cannot now claim the benefit of the doubt." *Id.* at 63. "The reason for this rule is to protect the party who did not choose the language from an unintended or unfair result." *Id.* Accordingly, Young Living's Motion to Compel Arbitration must be denied. Based on the same reasoning, the Foundation's Motion to Compel Arbitration also should be denied.

## IV. RECOMMENDATION

The undersigned **RECOMMENDS** that the District Court **DENY** Defendant Young Living Essential Oils, LC's Motion to Compel Arbitration (Dkt. No. 7). The undersigned **FURTHER RECOMMENDS** that the District Court **DENY** Defendant Young Living Foundation, Inc., Mary Young, Jared Turner, and Benjamin Riley's Motion To Compel Arbitration and Joinder in Young Living Essential Oil LC's Motion to Compel Arbitration and Stay Proceedings (Dkt. No. 8).

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Lee Yeakel.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on October 18, 2019.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE