Thomas M. Melsheimer (*Pro Hac Vice*)
John C.C. Sanders, Jr. (*Pro Hac Vice*)
Katrina G. Eash (*Pro Hac Vice*)
John Sullivan (*Pro Hac Vice*)
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Phone:  214-453-6500
Fax:  214-453-6400
tmelsheimer@winston.com
jsanders@winston.com
keash@winston.com
jsullivan@winston.com

Mary McCarthy (*Pro Hac Vice*)
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601-9703
Phone:  312-558-5600
Fax:  312-558-5700
mmccarthy@winston.com

*Counsel for Defendants*

Robert S. Clark (Utah Bar No. 4015)
Jeffrey J. Hunt (Utah Bar No. 5855)
David C. Reymann (Utah Bar No. 8495)
Bryan S. Johansen (Utah Bar No. 9912)
**PARR BROWN GEE & LOVELESS**
101 S. 200 E. Suite 700
Salt Lake City, UT 84111
Phone:  801-532-7840
Fax:  801-532-7750
rclark@parrbrpacown.com
jhunt@parrbrown.com
dreymann@parrbrown.com
bjohansen@parrbrown.com

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JULIE O'SHAUGHNESSY, INDIVIDUALLY, and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br> v.<br><br>YOUNG LIVING ESSENTIAL OILS, LC D/B/A YOUNG LIVING ESSENTIAL OILS, MARY YOUNG, AND JARED TURNER,<br><br>      Defendants. | **DEFENDANTS' FRCP 12(b)(6) AND 9(b) MOTION TO DISMISS**<br><br> Case No. 2:20-cv-00470-HCN-JCB<br><br> Judge Howard C. Nielson, Jr.<br> Magistrate Judge Jared C. Bennett |

## TABLE OF CONTENTS

I.    BACKGROUND .................................................................................................. 4

II.   LEGAL STANDARDS ....................................................................................... 5

III.  ARGUMENT AND AUTHORITIES ................................................................. 6

   A.    The PSLRA Preempts Plaintiff's RICO Claims ........................................ 6

   B.    Plaintiff Fails to State a RICO Claim under Rule 12(b)(6) and Rule 9(b) ..................... 9

      1.    Plaintiff Fails to Adequately Plead an "Enterprise" ................................. 12

         a.    Counts I–III: Plaintiff Fails to Plead the Person-Enterprise Distinction ................ 12

         b.    Counts I & II: Plaintiff Fails to Plead an Enterprise Distinct from The Predicate Acts ................................................................................................ 16

      2.    Plaintiff Fails to Plausibly Plead a "Pattern of Racketeering Activity" or "Predicate Acts" ........................................................................... 18

         a.    Plaintiff Fails to Allege How Each Defendant Engaged in the Alleged Predicate Acts ................................................................................ 18

         b.    Plaintiff Fails to Allege Falsity or Misrepresentation with the Specificity Required by Rule 9(b) ........................................................................ 19

         c.    Plaintiff Has Not Alleged Intent to Defraud with the Specificity Required by Rule 9(b) ......................................................................... 21

      3.    Plaintiff Fails to Plausibly Plead an Alleged Agreement Between the Individual Defendants to Support a Conspiracy ..................................... 23

IV.   CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                                               **Page(s)**

*Albright v. Att'y's Title Ins. Fund,*
   504 F. Supp. 2d 1187 (D. Utah 2007).....................................................................24

*Amaya v. Bregman,*
   149 F. Supp. 3d 1312 (D.N.M. 2015) ...................................................................17

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..............................................................................................5

*Bacchus Indus., Inc. v. Arvin Indus., Inc.,*
   939 F.2d 887 (10th Cir. 1991) .............................................................................18

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)..............................................................................................5

*Bixler v. Foster,*
   596 F.3d 751 (10th Cir. 2010) .....................................................................3, 6, 7, 8

*Boulware v. Baldwin,* No. 2:11-CV-762 TS,
   2012 WL 1412698 (D. Utah Apr. 23, 2012)...........................................................3

*Bradshaw v. Gatterman,*
   658 F. App'x 359 (10th Cir. 2016) (unpublished) ...................................................3

*Brannon v. Boatmen's First Nat'l Bank of Okla.,*
   153 F.3d 1144 (10th Cir. 1998) ......................................................................15, 16

*Burnett v. Amrein,*
   243 F. App'x 393 (10th Cir. 2007) ..............................................................3, 18, 21

*Crowley v. Montgomery Ward & Co., Inc.,*
   570 F.2d 877 (10th Cir. 1978) ...............................................................................7

*Dirt Hogs Inc. v. Nat. Gas Pipeline Co. of Am.,*
   210 F.3d 389 (10th Cir. 2000) (unpublished) .......................................................12

*Elsevier Inc. v. W.H.P.R., Inc.,*
   692 F. Supp. 2d 297, 302 (S.D.N.Y. 2010)....................................................24, 25

*Farlow v. Peat, Marwick, Mitchell & Co.,*
   956 F.2d 982 (10th Cir. 1992) .............................................................................22

*George v. Urban Settlement Servs.*,
    833 F.3d 1242 (10th Cir. 2016) ...........................................................................13, 21

*Kaplan v. Archer*, No. 11-CV-02094-PAB-CBS,
    2012 WL 3277170 (D. Colo. July 3, 2012) ...................................................................21

*Kearney v. Dimanna*,
    195 F. App'x 717 (10th Cir. 2006) ...............................................................................17

*Koch v. Koch Indus. Inc.*,
    203 F.3d 1202 (10th Cir. 2000) .......................................................................................6

*L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*,
    863 F. Supp. 2d 1066 (D. Colo. 2012)...........................................................................20

*Llacua v. W. Range Ass'n*,
    930 F.3d 1161 (10th Cir. 2019) .....................................................................................12

*Lundahl v. Pennsylvania Mfg. Ass'n Ins. Co.*,
    440 F. App'x 629 (10th Cir. 2011) ..................................................................................4

*MacArthur v. San Juan Cty.*,
    416 F. Supp. 2d 1098 (D. Utah 2005)..............................................................................4

*Malvar Egerique v. Chowaiki*, No. 19 CIV. 3110 (KPF),
    2020 WL 1974228 (S.D.N.Y. Apr. 24, 2020)................................................................24

*Martinez v. MXI Corp.*, No. 3:15-cv-00243-MMD-VPC,
    2015 WL 8328275 (D. Nev. Dec. 8, 2015)......................................................................2

*Martinez v. MXI Corp*, No. 3:15-cv-00243-MMD-VPC,
    2016 WL 951430 (D. Nev. Mar. 9, 2016) ........................................................................9

*Miller v. Basic Research, Inc.*, No. 2:07-CV-871 TS,
    2008 WL 4755787 (D. Utah Oct. 27, 2008) ..................................................................14

*Nielsen v. The Patriot Grp., LLC*, No. 1:15-CV-00137,
    2016 WL 407073 (D. Utah Feb. 2, 2016) ..................................................................5, 20

*O & G Carriers, Inc. v. Smith*,
    799 F. Supp. 1528 (S.D.N.Y. 1992)..............................................................................14

*Odishelidze v. Aetna Life & Cas. Co.*,
    853 F.2d 21 (1st Cir. 1988)............................................................................................17

*Ogles v. Sec. Benefit Life Ins. Co.*,
  401 F. Supp. 3d 1210 (D. Kan. 2019) ...................................................................22

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993).............................................................................................15

*Roberts v. C.R. England, Inc.*,
  318 F.R.D. 457 (D. Utah 2017) ...........................................................................13

*S.E.C. v. CKB168 Holding, Ltd.*,
  210 F. Supp. 3d 421 (E.D.N.Y. 2016) ...................................................................2

*S.E.C. v. Glenn W. Turner Enters., Inc.*,
  474 F.2d 476 (9th Cir.), *cert. denied*, 414 U.S. 821, 94 S. Ct. 117, 38 L. Ed. 2d
  53 (1973).................................................................................................................2

*S.E.C. v. Int'l Loan Network, Inc.*,
  968 F.2d 1304 (D.C. Cir. 1992) ....................................................................2, 7, 8

*S.E.C. v. W.J. Howey Co.*,
  328 U.S. 293 (1946)...............................................................................................6

*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985)...............................................................................................4

*Smith v. LifeVantage Corp.*,
  429 F. Supp. 3d 1275 (D. Utah 2019)......................................................2, 6, 7, 9

*Spence v. Basic Research*, No. 2:16-CV-925-CW,
  2018 WL 1997310 (D. Utah Apr. 27, 2018)........................................................13

*Switzer v. Coan*,
  261 F.3d 985 (10th Cir. 2001) ........................................................................3, 13

*Tal v. Hogan*,
  453 F.3d 1244 (10th Cir. 2006) ................................................................... *passim*

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,
  975 F.2d 1134 (5th Cir. 1992) .............................................................................24

*Tuchman v. DSC Commc'ns Corp.*,
  14 F.3d 1061 (5th Cir. 1994) ...............................................................................22

*United States v. Hampton*,
  786 F.2d 977 (10th Cir. 1986) .............................................................................24

*United States v. Smith*,
    413 F.3d 1253 (10th Cir. 2005) ................................................................3

*Waddell & Reed Fin., Inc. v. Torchmark Corp.*,
    223 F.R.D. 566 (D. Kan. 2004)...............................................................22

*Wade v. Gaither*,
    623 F. Supp. 2d 1277 (D. Utah 2009).......................................................6

*Walker v. Beaumont Indep. Sch. Dist.*,
    938 F.3d 724 (5th Cir. 2019) ...........................................................17, 19

*Webster v. Omnitrition Int'l., Inc.*,
    79 F.3d 776 (9th Cir. 1996) ...........................................................2, 7, 9

*Weiszmann v. Kirkland & Ellis*,
    732 F. Supp. 1540 (D. Colo. 1990)..........................................................24

*Whelan v. Winchester Prod. Co.*,
    319 F.3d 225 (5th Cir. 2003) ................................................................17

**Statutes**

18 U.S.C. § 1961(1)(B)....................................................................................10

18 U.S.C. § 1961(4) .........................................................................................12

18 U.S.C. § 1961(5) .........................................................................................18

18 U.S.C. § 1962(c) .........................................................................................25

PSLRA (Pub. L. 104-67, § 107) .......................................................................6

Plaintiff's Amended Complaint adds no substance to her original Racketeer Influenced and Corrupt Organizations ("RICO") claims, but merely attempts to reshuffle her allegations to satisfy the RICO pleading standards.  Originally, Plaintiff Julie O'Shaughnessy brought a class action complaint against Young Living Essential Oils ("Young Living"), its Chief Executive Officer Mary Young, Chief Operating Officer Jared Turner, and Chief Sales Officer Benjamin Riley, as well as nonprofit affiliated entity The Young Living Foundation, Inc. (the "Foundation").  Plaintiff joined Young Living as a Member in 2015 and purports to represent a potential class of all United States residents who joined Young Living prior to December 31, 2016.  Her original complaint alleged that Young Living's business is a "pyramid scheme" and alleged that Young Living, Ms. Young, Mr. Turner, Mr. Riley, and the Foundation violated RICO under 18 U.S.C. §§ 1961(5) and 1962(c).  Dkt. 1.  Plaintiff attempted to plead a RICO claim and RICO conspiracy claim sounding in wire and mail fraud against the five original defendants.  *Id*.  All Defendants moved to dismiss Plaintiff's Original Complaint under Rules 12(b)(6) and 9(b).  Dkts. 43, 44.

Defendants moved to dismiss Plaintiff's Original Complaint as being preempted by the Private Securities Litigation Reform Act ("PSLRA") and as failing to sufficiently allege a RICO claim under Rules 12(b)(6) and 9(b).  Specifically, Plaintiff failed to plead various RICO elements, including the person-enterprise distinction, an enterprise distinct from predicate acts, an enterprise with a viable common purpose, a causal relationship, an intent to defraud or predicate acts.  Instead of addressing the motion to dismiss on its merits, Plaintiff amended.  Dropping Young Living's Chief Sales Officer, the Foundation, and unknown "co-conspirators" as defendants, Plaintiff's Amended Complaint purports to bring a RICO claim against Young Living (Count III) and a RICO claim and a RICO conspiracy claim (Counts I and II) against Young Living's Chief Executive

Officer Mary Young and Chief Operating Officer Jared Turner (the "Individual Defendants").

Plaintiff's Amended Complaint merely reshuffles, and does not cure, key deficiencies that Defendants identified in the Original Complaint. **First**, Plaintiff's RICO claims are preempted by the PSLRA, under which alleged pyramid schemes are treated as conduct in connection with the purchase or sale of a security. Indeed, just a few months ago, in *LifeVantage Corp.*, a United States District Court in Utah determined that the plaintiff was alleging "the LifeVantage MLM structure constitutes a pyramid scheme" and unequivocally concluded that an "investment in a pyramid scheme is itself a security." *Smith v. LifeVantage Corp.*, 429 F. Supp. 3d 1275, 1282–83 (D. Utah 2019) (J. David Nuffer) (citing *S.E.C. v. CKB168 Holding, Ltd.*, 210 F. Supp. 3d 421, 450 (E.D.N.Y. 2016)). The court thereby joined numerous courts that have found pyramid scheme allegations to constitute *de facto* securities fraud allegations. *See, e.g.*, *Webster v. Omnitrition Int'l., Inc.*, 79 F.3d 776, 784 (9th Cir. 1996) ("In *S.E.C. v. Glenn W. Turner Enters., Inc.*, 474 F.2d 476 (9th Cir.), *cert. denied*, 414 U.S. 821, 94 S. Ct. 117, 38 L. Ed. 2d 53 (1973), we declared that **investments in a pyramid scheme were 'investment contracts' and thus securities within the meaning of the federal securities laws**.") (emphasis added); *S.E.C. v. CKB168 Holding, Ltd.*, 210 F. Supp. 3d at 450 (E.D.N.Y. 2016) ("[A]n investment in a pyramid scheme **is itself** a security.") (emphasis added) (citing *S.E.C. v. Int'l Loan Network, Inc.*, 968 F.2d 1304, 1309 (D.C. Cir. 1992); *Martinez v. MXI Corp.*, No. 3:15-cv-00243-MMD-VPC, 2015 WL 8328275, *4 (D. Nev. Dec. 8, 2015) ("The court does agree with defendants that plaintiffs' RICO claims are unlikely to move forward. [. . .] [I]f plaintiffs' allegations [that Defendant operates a pyramid scheme] are accepted as true, investments in MXI are securities, and plaintiffs allege conduct that is actionable as securities fraud. Such claims cannot be used to establish a RICO violation."). When pyramid

scheme allegations are treated as securities fraud allegations, it is axiomatic that such allegations are preempted by the PSLRA, even when artfully pled as RICO allegations. *See e.g., id.; Bixler v. Foster*, 596 F.3d 751, 759 (10th Cir. 2010) (alleged fraudulent acts undertaken in connection with the purchase of a security barred by the PSLRA); *Boulware v. Baldwin*, No. 2:11-CV-762 TS, 2012 WL 1412698, at *12 (D. Utah Apr. 23, 2012) (RICO claims barred under PSLRA).

**Second**, and alternatively, under Rule 12(b)(6), Plaintiff fails to adequately plead multiple RICO elements, including: (1) the person-enterprise distinction, *see Switzer v. Coan*, 261 F.3d 985, 992 (10th Cir. 2001) (noting that it is "well-settled" in the Tenth Circuit that under 18 U.S.C. § 1962(c) that "the defendant 'person' must be an entity distinct from the alleged 'enterprise.'"); (2) an enterprise distinct from the alleged predicate acts, *see United States v. Smith*, 413 F.3d 1253, 1266–67 (10th Cir. 2005) (to establish an enterprise, a party must provide evidence of "an entity separate and apart from the pattern of [racketeering] activity in which it engages"), or (3) predicate acts amounting to wire or mail fraud as to each defendant, *see, e.g.*, *Burnett v. Amrein*, 243 F. App'x 393, 395 (10th Cir. 2007) (dismissing RICO complaint for failing to plead with particularity where it "contained nothing more than general allegations that certain unknown mailings were false, without ever identifying the alleged falsity"). She also fails to plead an alleged agreement sufficient to support a RICO conspiracy claim. *See, e.g.*, *Bradshaw v. Gatterman*, 658 F. App'x 359, 362 (10th Cir. 2016) (unpublished) (plaintiff failed to state a RICO claim where allegations failed to "describe with any particularity the purported conspiracy"). Moreover, Plaintiff has not pled her fraud-based RICO claims with the requisite particularity under Rule 9(b).

Plaintiff has already availed herself of an amended complaint following the deficiencies identified in Defendants' initial motions to dismiss, and in failing to remedy those deficiencies,

has demonstrated further amendment would be futile.  Any requests for leave to further amend should be denied.  *See Lundahl v. Pennsylvania Mfg. Ass'n Ins. Co.*, 440 F. App'x 629, 633 (10th Cir. 2011) (affirming denial of motion to amend where amendment would be futile); *see also MacArthur v. San Juan Cty.*, 416 F. Supp. 2d 1098, 1137 (D. Utah 2005) ("Where a plaintiff's amended complaint fails to allege specific facts stating the elements essential to her federal claim under RICO, dismissal with prejudice is warranted.").

As has been recognized time and again, RICO claims are infamously hard to plead—especially when a plaintiff alleges misconduct that the RICO laws were not intended to cover, in an attempt to obtain treble damages and attorneys' fees.[1]  Defendants respectfully request the Court dismiss with prejudice Plaintiff's RICO claims under Rule 12(b)(6) and/or Rule 9(b).

## I.   BACKGROUND

Young Living is a renowned, globally recognized company that creates and manufactures therapeutic essential oils and wellness solutions, which it sells through its Members.  Young Living's "Members" are independent contractors and distributors that sell Young Living's products to thousands of customers across the world.  Young Living was founded by Mary Young and the late D. Gary Young, and is incorporated in Utah, where its headquarters are also located.

Young Living's business is not a pyramid scheme.  Plaintiff's inflammatory allegations to the contrary will be addressed if and when appropriate.  Despite noting that the Federal Trade Commission has been abundantly clear that Young Living's business model is not per se illegal, Plaintiff alleges Young Living is "unequivocally a pyramid scheme."  Am. Compl. ¶ 42.  Plaintiff

---

[1] *See, e.g.*, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 525 (1985) (RICO statute was intended to be applied to organized crime, although its provision for treble damages is "an enticing invitation to litigate these claims in federal courts.").

also sued the following Individual Defendants, as described by Plaintiff: Mary Young, "Young Living's chief executive officer"; and Jared Turner, "Young Living's president and chief operating officer[.]"  *Id.* ¶¶ 9–11.

Plaintiff joined Young Living as a Member in 2015.  *Id.* ¶ 7.  Plaintiff filed this putative class action on April 12, 2019, purporting to represent a potential class of all United States residents who joined Young Living prior to December 31, 2016, and enrolled as "Essential Reward Members," whether or not those individuals ever purchased any products, made any payments to Young Living, or otherwise suffered any harm.  *Id.* ¶ 106.  In her Amended Complaint, Plaintiff alleges three counts: two violations of 18 U.S.C. § 1962(c) (Count I and Count III) and one violation of 18 U.S.C. § 1962(d)—Conspiracy to Violate 18 U.S.C. § 1962(c) (Count II).  Each count is premised **entirely** on Plaintiff's theory that Young Living operates as a pyramid scheme.

## II.   LEGAL STANDARDS

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint's factual allegations must "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.  Further "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Sounding in mail and wire fraud, Plaintiff's two RICO claims are also subject to the heightened pleading standard under Rule 9(b).  *See, e.g.*, *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) ("The particularity requirement of Rule 9(b), Federal Rules of Civil Procedure, applies to claims of mail and wire fraud."); *see also Nielsen v. The Patriot Grp., LLC*, No. 1:15-CV-00137,

2016 WL 407073, at *2 (D. Utah Feb. 2, 2016) ("A RICO claim must be pleaded with particularity under Fed. R. Civ. P. 9(b)."). Rule 9(b) requires a plaintiff "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." _Koch v. Koch Indus. Inc._, 203 F.3d 1202, 1236 (10th Cir. 2000). And for RICO claims, "the need to plead fraud with particularity is especially crucial given the threat of treble damages and injury to reputation which attend RICO actions." _Wade v. Gaither_, 623 F. Supp. 2d 1277, 1284 (D. Utah 2009).

## III.    ARGUMENT AND AUTHORITIES

### A.    The PSLRA Preempts Plaintiff's RICO Claims

Alleged pyramid schemes and conduct in connection therewith are securities allegations falling under the purview of the PSLRA (Pub. L. 104-67, § 107) and may not be brought as RICO claims. The PSLRA amended Section 1964(c) of RICO "to provide that 'no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO].'" _Bixler_, 596 F.3d at 759. Securities fraud encompasses "'**any** act, practice, or course of business which operates or would operate as a fraud or deceit upon any person' when transacting in securities." _LifeVantage Corp._, 429 F. Supp. 3d 1275, 1283 (D. Utah 2019) (emphasis added). And in _S.E.C. v. W.J. Howey Co._, 328 U.S. 293, 298–99 (1946), the Supreme Court defined an investment contract under federal securities law as "a contract, transaction, or **scheme** whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." (emphasis added).

Courts, including the Tenth Circuit, have broadly interpreted the _Howey_ test, finding that investment in a plan falls under the definition of an "investment contract" governed by securities

6

laws where the profits from the alleged scheme are expected to accrue "if not solely, **at least predominantly** from the efforts of others, namely of the downline members[.]" *S.E.C. v. Int'l Loan Network, Inc.*, 968 F.2d at 1308 (D.C. Cir. 1992) (emphasis added); *see Crowley v. Montgomery Ward & Co., Inc.*, 570 F.2d 877, 879–880 (10th Cir. 1978) (stating the requirements for an "investment contract" are "an investment, in common enterprise, with a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others"); *LifeVantage Corp.*, 429 F. Supp. 3d at 1282–83 ("Investment in a pyramid scheme is itself a security" because profit comes "if not solely, at least predominantly from the efforts of others, namely of the downline members."); *Omnitrition.*, 79 F.3d at 784 (9th Cir. 1996) (investments in a pyramid scheme were "investment contracts" and thus securities; if the defendant's "program is a pyramid scheme, investments in the program's supervisor positions are securities").  This PSLRA bar applies even if Plaintiff pleads a RICO claim based on predicate acts such as wire fraud or mail fraud.  *Bixler*, 596 F.3d at 760 ("mail and wire fraud…" constitute conduct that "cannot support a civil RICO claim after enactment of the PSLRA").

Here, Plaintiff's allegations fall under the PSLRA, and are accordingly preempted.  First, just over six months ago, Judge David Nuffer of the United States District Court for the District of Utah correctly held that investment in a pyramid scheme is itself a security.  *LifeVantage Corp.*, 429 F. Supp. 3d at 1282.  In doing so, the *LifeVantage* court made this determination without any particular analysis or assessment of the underlying specifics of the allegations; rather, the court found axiomatically that the mere allegation of a pyramid scheme implicates securities laws.  *Id.* In doing so, the *LifeVantage* court appropriately joins the numerous courts that have held similarly. *See supra*, p. 2.  Any reading of Plaintiff's Amended Complaint, just as with her Original

Complaint, makes clear Plaintiff is alleging Defendants operate a pyramid scheme.  Am. Compl.

¶ 1 ("Young Living operates an illegal pyramid scheme[.]").  Accordingly, Plaintiff's allegations

implicate "investment contracts" governed by federal securities laws.

Second, even if the court were to examine Plaintiff's specific allegations, there is likewise

no doubt Plaintiff's claims sound in securities law.  Plaintiff alleges that Young Living Members

like her "have virtually no chance to get a return on their **investment**" because Young Living

operates an "illegal pyramid scheme."  Am. Compl. ¶ 50 (emphasis added).  Specifically, she

alleges that she, along with other Members, invested in Defendants' alleged "scheme" whereby

Members make profits predominately through the efforts of their downline members:

- "As Members attempt to move through the Young Living compensation system, their **only** opportunity to earn enough income to cover the cost of Membership is **by recruiting new Members and then encouraging their down line Members to also recruit aggressively**."  Am. Compl. ¶ 28 (emphasis added).

- "But there is no real incentive for a Member to try to become a reseller of oils as opposed to becoming a recruiter of more down line members for two important reasons.  First, there's **no real opportunity** for a Member **to profit from becoming a reseller** of oils…."  *Id.* ¶ 31 (emphasis added).

- "This is **not a system designed to sell product** to those outside the pyramid."  *Id.* ¶ 33 (emphasis added).

These allegations demonstrate that under Plaintiff's allegations, profits from the alleged scheme

are expected to accrue "if not solely, **at least predominantly** from the efforts of others," satisfying

the Supreme Court's *Howey* test.  *See* Int'l Loan Network, 968 F.2d at 1308. (emphasis added).

Third, Plaintiff's attempts to skirt the PSLRA also fail.  Her allegations of predicate acts

of wire and mail fraud do not save her Complaint from the PSLRA bar.  *See* Bixler, 596 F.3d at

760 (noting that "allowing plaintiffs to engage in 'surgical presentation of the cause of action'

would undermine the purpose of the RICO amendment").  Plaintiff's Amended Complaint also

attempts to skirt the PSLRA bar with new allegations that she and class members "did not join Young Living through any type of investment contract."  Am. Compl. ¶ 8.  She asserts that the purported class members are independent contractors that "sell essential oils" in addition to recruiting, and "must individually and at their own direction and significant personal effort sell essential oils and recruit new members."  *Id.*  Not only are these allegations at odds with Plaintiff's assertion that Members "have virtually no chance to get a return on their **investment**," *id.* ¶ 50 (emphasis added), which is the epitome of a pyramid scheme, but she also alleges recruitment of downline members is the only way to make money.  *See, e.g.*, *id.* ¶¶ 28, 31, 33.  These allegations reveal that under Plaintiff's erroneous theory of Young Living's business model, profits from the alleged scheme accrue based on the structure of the scheme (*i.e.*, the efforts of **others**) and **not** one's own efforts.

Artful pleading attempting to disavow the PSLRA cannot ignore the legal principle that "investments" in a pyramid scheme are considered "securities" under the PSLRA.  *See, e.g.*, *LifeVantage Corp.*, 429 F. Supp. 3d at 1282; *Omnitrition*, 79 F.3d at 784; *Martinez v. MXI Corp*, No. 3:15-cv-00243-MMD-VPC, 2016 WL 951430, at *8 (D. Nev. Mar. 9, 2016) ( "investments in pyramid schemes are securities as a result of the nature of pyramid schemes").  Plaintiff cannot have it both ways: either her pyramid scheme allegations fail or they are improper RICO claims barred under the PSLRA.  Plaintiff's RICO claims are preempted, and they should be dismissed.

**B.      Plaintiff Fails to State a RICO Claim under Rule 12(b)(6) and Rule 9(b)**

Aside from the PSLRA bar, Plaintiff's RICO claims should be dismissed under Rules 12(b)(6) and 9(b).  Consisting of vague and conclusory allegations, Plaintiff's Amended Complaint fails to plead the elements of a RICO claim against any Defendant, and certainly not with the

particularity required by Rule 9(b).  18 U.S.C. § 1962(c) makes it illegal:

> for any **person** employed by or associated with any **enterprise** engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. (emphasis added).

Therefore, Plaintiff must allege that Defendants ("persons") (1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Tal*, 453 F.3d at 1269.  The "racketeering activity," also known as "predicate acts," may include wire and mail fraud.  18 U.S.C. § 1961(1)(B).  Plaintiff brings three claims under RICO: (I) a claim against the Individual Defendants, Young and Turner, under 18 U.S.C. § 1962(c); (II) a conspiracy claim against the Individual Defendants under § 1962(d); and (III) a claim against Young Living under § 1962(c).

- **Count I**:  Plaintiff's first RICO claim against the Individual Defendants alleges that Young Living's CEO (Ms. Young) and its COO (Mr. Turner) are "persons" who "individually conducted, participated in, engaged in, and operated and managed the affairs of an Individual Enterprise" consisting of the CEO and COO, and that they conducted their Individual Enterprise through a pattern of racketeering activity consisting of "the specific acts of wire and mail fraud (*see* ¶¶ 75-101)."  Am. Compl. ¶ 117; *see id*. ¶¶ 116–123.  In this same count, Plaintiff pleads an alternative theory that instead **Young Living** is the enterprise, alleging that its CEO and COO are "persons" who "individually conducted, participated in, engaged in, and operated and managed the affairs of Young Living through a pattern of racketeering activity" consisting of "the specific acts of wire and mail fraud (*see* ¶¶ 75-101)."  *Id*. ¶ 118.

- **Count II**:  Plaintiff's second RICO claim alleges a conspiracy claim against Young Living's CEO and COO, alleging that they are "Operator/Managers" who **conspired with themselves** to conduct the affairs of "the enterprises"—Plaintiff does not specify which "enterprise"—through the same alleged pattern of racketeering activity of wire and mail fraud.  *Id*. ¶¶ 124–129.

- **Count III:**  And, in turn, Plaintiff's third RICO claim alleges an entirely new theory that Young Living is a "person" who conducted the affairs of the Young Living Foundation "enterprise" through a pattern of racketeering activity consisting of the same purported acts of wire and mail fraud.  *Id*. ¶ 131.

However, aside from the individual Counts, the rest of Plaintiff's Amended Complaint only refers to a single "Enterprise" that purportedly consisted of Gary Young, Young Living, the

Foundation, and Young Living's CEO and COO. Specifically, she alleges that "the Enterprise was structured in the following manner," and its members "agreed to function in the following roles," identifying: (1) Gary Young as the founder of Young Living and the Young Living Foundation, (2) the Foundation, a charitable entity, providing "the Enterprise with a patina of legitimacy," and (3) Ms. Young as a co-founder and CEO of "Young Living and the Enterprise," and Mr. Turner as President and COO of "Young Living and the Enterprise." *Id.* ¶¶ 51(a)–(c); *see id.* ¶¶ 62(a)–(d). In addition, other allegations identify Young Living as a member of "the Enterprise." *Id.* ¶ 54 ("In order to effect the illegal objectives of the Enterprise, **Young Living**, the Foundation, Young, Turner, and other known and unknown members of the Enterprise….") (emphasis added).

The variations in Plaintiff's RICO theories are outlined in **Table A**:

| | Count I: Theory A | Count I: Theory B | Count II | Count III | Other Complaint Allegations |
|---|---|---|---|---|---|
| **Person(s)** | Young Living's CEO and COO (Am. Compl. ¶ 117) | Young Living's CEO and COO (*Id.* ¶ 118) | Young Living's CEO and COO (*Id.* ¶ 125) | Young Living (*Id.* ¶ 131) | Young Living, its CEO, and its COO (*Id.* ¶ 64) |
| **Enterprise** | "Individual Enterprise" of Young Living's CEO and COO (*Id.* ¶ 117) | Young Living (*Id.* ¶ 118) | "the enterprises," potentially referring to "the enterprises" identified in Count I, Theory A, *or* Theory B (*Id.* ¶ 126) | Young Living Foundation (*Id.* ¶ 131) | Gary Young, Young Living, Young Living Foundation, Young Living's CEO and COO (*Id.* ¶¶ 51(a)–(c), 54, 62(a)–(d)) |
| **Pattern of Racketeering Activity** | Wire and mail fraud alleged in ¶¶ 75–101 (*Id.* ¶ 117) | Wire and mail fraud alleged in ¶¶ 75–101 (*Id.* ¶ 118) | Wire and mail fraud alleged in ¶¶ 75–101 (*Id.* ¶ 127) | Wire and mail fraud alleged in ¶¶ 75–101 (*Id.* ¶¶ 133–34) | Wire and mail fraud alleged in ¶¶ 75–101 |

Plaintiff's RICO claims fail because, under Rule 12(b)(6) and Rule 9(b), Plaintiff fails to adequately plead: the "enterprise" and "pattern of racketeering activity" elements; Defendants' fraudulent intent; and an alleged agreement to support a conspiracy claim.

### 1. *Plaintiff Fails to Adequately Plead an "Enterprise"*

Plaintiff fails to state a RICO claim under Rule 12(b)(6) because she fails to adequately plead the "enterprise" element. Under RICO, an "enterprise" must be **distinct** from the alleged "persons" **and** distinct from the alleged "pattern of racketeering"—Plaintiff's Amended Complaint makes no such distinction between an enterprise and persons therein, or the enterprise and the alleged pattern of racketeering. As the Tenth Circuit has recognized, "inconsistent and conclusory allegations" that "employ a 'moving target' approach to describing an enterprise" do not "sufficiently identify" an essential element of a plaintiff's RICO claim. *Dirt Hogs Inc. v. Nat. Gas Pipeline Co. of Am.*, 210 F.3d 389 (10th Cir. 2000) (unpublished).

### a. Counts I–III: Plaintiff Fails to Plead the Person-Enterprise Distinction

Plaintiff's RICO claims fail to plead an enterprise distinct from the persons conducting the alleged predicate acts. Under RICO, an enterprise can be a legal entity or "any union or group of individuals associated in fact although not a legal entity." *See Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1182 (10th Cir. 2019). But a plaintiff must also allege that "the defendant 'person'" is "an entity **distinct from the alleged enterprise**." *Id.* (emphasis added); *see also* 18 U.S.C. § 1961(4). Plaintiff fails to do so in her Amended Complaint.

In **Count I, Theory A**, Plaintiff alleges that Young Living's CEO and COO are **both** the "persons" **and** the "Individual Enterprise." Am. Compl. ¶ 117 ("Young and Turner constitute an 'enterprise' ... (hereinafter referred to as the 'Individual Enterprise') ... Young and Turner are each a person, ... who individually conducted ... the affairs of an Individual Enterprise."). There is no

distinction between the persons and the enterprise—they are the same—so Count I, Theory A fails to plead a RICO claim against Young Living's CEO and COO as a matter of law and must be dismissed.  *See Switzer*, 261 F.3d at 992 (affirming dismissal of a RICO claim when the plaintiff failed to adequately allege an enterprise distinct from the defendant person).

**Count I, Theory B**—the theory that the CEO and COO are the "persons" and Young Living the "enterprise," Am. Compl. ¶ 118—fares no better.  A "defendant corporation, acting through its subsidiaries, agents, or employees typically can't be both the RICO 'person' and the RICO 'enterprise.'"  *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1249 (10th Cir. 2016); *see also Spence v. Basic Research*, No. 2:16-CV-925-CW, 2018 WL 1997310, at *3 (D. Utah Apr. 27, 2018); *Roberts v. C.R. England, Inc.*, 318 F.R.D. 457, 486 (D. Utah 2017).  Here, Plaintiff's allegations regarding Young and Turner as RICO "persons" reflect actions of Young and Turner as employees and agents of Young Living.  For instance, Plaintiff alleges that Young "wrote and created the fictional biography" of co-founder Gary Young.  *See* Am. Compl. ¶ 51.  Such an action is clearly in line with her duties as "co-founder" and "Chief Executive Officer."  *Id.*  Likewise, Plaintiff alleges that Turner also engaged in activities as a RICO "person" that are part of his duties as an executive of Young Living, such as developing marketing materials while also acting as Young Living's Chief Sales and Marketing Officer.  *See id.* ¶ 62.  Plaintiff's Amended Complaint lacks any allegation that would support the contention that Young and Turner were acting in a capacity beyond their roles as Young Living executives.  This formulation of the RICO enterprise fails the "person-enterprise" distinction and therefore, Count I, Theory B must also be dismissed.

Moreover, **both Count I theories** also fail to state a claim under Rule 9(b) because Count I contains two alternative, conflicting theories about which "enterprise" was used to conduct the

alleged mail and wire fraud, thus violating the heightened particularity requirements of Rule 9(b). Rule 9(b) requires a Plaintiff to identify, **with specificity**, the "who, what, when, where, how" for claim sounding in fraud. *See, e.g.*, *Miller v. Basic Research, Inc.*, No. 2:07-CV-871 TS, 2008 WL 4755787, at *4 (D. Utah Oct. 27, 2008) ("At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud."). Plaintiff's scattershot approach to pleading multiple different enterprises—through which various defendants allegedly conducted the **same** alleged pattern of racketeering activity—"is precisely the sort of pleading prohibited by Rule 9(b)." *O & G Carriers, Inc. v. Smith*, 799 F. Supp. 1528, 1541 (S.D.N.Y. 1992) (concluding that a plaintiff alleging different enterprise variations violated Rule 9(b) and failed to state a RICO claim). Plaintiff's Count I claims must be dismissed under Rule 9(b).

**Count II,** the RICO conspiracy claim against the Individual Defendants, also fails on this element. First, the RICO conspiracy claim is a dependent claim and falls with the underlying RICO claim of Count I. *See* *Tal*, 453 F.3d at 1270 (when a plaintiff fails to properly plead a RICO claim under § 1962(c), it correspondingly fails to properly plead a RICO conspiracy claim under § 1962(d)). Second, the RICO conspiracy claim fails to identify an "enterprise," merely referring to "affairs of the enterprises," without identifying **which** enterprise Plaintiff is referring to. Am. Compl. ¶ 126. The lack of clarity as to which enterprises Plaintiff is referring to is significantly compounded by the fact that Plaintiff incorporates by reference multiple paragraphs of her Amended Complaint, *see, e.g.*, ¶ 124 (incorporating ¶¶ 1–123), that contain different, and conflicting, definitions of the alleged "enterprise," including at least the following variations: (1) Gary Young, the Foundation, Mary Young, and Jared Turner (*id*. ¶¶ 51–55, 62–63); (2) Mary

Young and Jared Turner (*id.* ¶ 117); and (3) Young Living (*id.* ¶ 118).  Plaintiff's conclusory allegations in Count II simply do not satisfy Rule 9(b) and as such, Count II must be dismissed.

**Count III** fails too.  In Count III, Plaintiff alleges that Young Living is the "person" and the Foundation the "enterprise."  But these rote allegations parroting RICO fail to explain how Young Living purportedly conducts the Foundation's affairs **or** how Young Living used the Foundation to facilitate the alleged predicate acts of wire and mail fraud.  Section 1962(c) requires a distinctiveness between the RICO enterprise and RICO person because under the statute, a defendant person violates the statute **by conducting** an enterprise **through a pattern of racketing activity**.  The Supreme Court has held that liability under § 1962(c) "depends on showing that the defendant[ ] conduct[s] or participat[es] in the conduct of the 'enterprise's affairs,' **not just [its] own affairs**."  *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis added).  Thus, participation in a RICO enterprise requires that the plaintiff demonstrate that the RICO "person" had some part in directing that RICO enterprise's affairs, not just its own affairs—that is, conducting one's own business affairs does not violate RICO.  *Id.*  Instead, a complaint's well-pled factual allegations must support an inference that a defendant worked on behalf of the RICO enterprise.  Moreover, "an allegation of RICO liability under 1962(c) must indicate how the defendant **used the alleged enterprise** to facilitate the fraudulent conduct."  *Brannon v. Boatmen's First Nat'l Bank of Okla.*, 153 F.3d 1144, 1148–49 (10th Cir. 1998) (the plaintiff failed to allege an enterprise where the complaint "alleges only that the defendants perpetrating the fraud on [the plaintiff] were conducting their own ... affairs") (emphasis added).

Here, Plaintiff's Count III conclusorily alleges that Young Living is the RICO "person" that allegedly conducted the affairs of the Foundation, the alleged "enterprise."  In doing so,

Plaintiff has attempted to manufacture a RICO claim through artful pleading when the facts contained in the Amended Complaint actually demonstrate that Young Living was doing nothing more than conducting its own affairs. Plaintiff merely highlights this fact by explicitly pleading that the Foundation is "an independent 501c(3) corporation and is not a subsidiary of Young Living." Am. Compl. ¶ 62(b). Plaintiff fails to identify any control that Young Living has over the Foundation. Other than conclusory recitations of the elements of a RICO claim, Plaintiff has not alleged any facts that, taken as true, show that Young Living conducted the affairs of the Foundation, which is the alleged enterprise in Plaintiff's Count III.

In fact, Plaintiff's allegations regarding the pattern of racketeering relate only to Young Living's alleged conduct—**not** the Foundation—and there are no allegations that Young Living engaged in that conduct on behalf of, or for the benefit of, the Foundation. *Id.* ¶¶ 75–101. Plaintiff's allegations regarding the "Racketeering Violations" relate to Young Living's conduct pursued for the benefit of Young Living, such as Young Living marketing emails, shipments of Young Living products, and purchases of and payments for Young Living products. *Id.* Thus, based on Plaintiff's own allegations, Young Living was conducting its own affairs, not the Foundation's affairs, and Young Living did not participate in, or operate, or manage the Foundation's affairs through the alleged pattern of racketeering activity. *See Brannon*, 153 F.3d at 1146. Count III should be dismissed as well.

### b.    Counts I & II: Plaintiff Fails to Plead an Enterprise Distinct from The Predicate Acts

Because the entire premise of her complaint—and her RICO causes of action—is that Young Living's very business is predicate acts of mail and wire fraud committed by fulfilling product orders and sending marketing emails, Plaintiff also fails to allege an enterprise distinct

from the predicate acts.  Importantly, "a plaintiff must provide evidence of the existence of an entity separate and apart from the pattern of racketeering activity"—it "must exist for purposes other than just to commit predicate acts." _Walker v. Beaumont Indep. Sch. Dist._, 938 F.3d 724, 738 (5th Cir. 2019); _see also Amaya v. Bregman_, 149 F. Supp. 3d 1312, 1321 (D.N.M. 2015) ("In assessing whether an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering, it is [the] normal practice to determine if the enterprise would still exist were the predicate acts removed from the equation.").

Plaintiff alleges that Young Living's entire business is to engage in a "pyramid scheme" of "predicate acts" of wire and mail fraud—_see, e.g._, Am. Compl. ¶¶ 75–101—and that its CEO and COO run Young Living's business.  _See id._ ¶¶ 51, 62.  But merely labeling Young Living and its corporate executives as "enterprises" fails to actually allege any distinction between any alleged enterprise in Count I (i.e., either Young Living or its corporate executives) and the alleged "predicate acts."  _See, e.g._, _Kearney v. Dimanna_, 195 F. App'x 717, 721 (10th Cir. 2006) (Plaintiff failed to allege an enterprise for purposes of RICO where the alleged "enterprise" did not exist independent of the alleged pattern of racketeering activity); _Whelan v. Winchester Prod. Co._, 319 F.3d 225, 230 (5th Cir. 2003) (no RICO claim where plaintiff failed "to demonstrate the existence of an association separate from the predicate acts"); _Odishelidze v. Aetna Life & Cas. Co._, 853 F.2d 21, 23–24 (1st Cir. 1988) ("companies and their officers or employees (the named defendants) cannot be the entity that conducts its own affairs through a pattern of racketeering activity").  Therefore, Counts I and II should be dismissed.

2.      *Plaintiff Fails to Plausibly Plead a "Pattern of Racketeering Activity" or "Predicate Acts"*

For all of the RICO claims, even accepting her allegations as true, Plaintiff fails to plausibly plead the additional RICO element of a "pattern of racketeering activity" (or "predicate acts"). Specifically, she fails to allege the following with the particularity required of Rule 9(b): (1) how each defendant engaged in the alleged predicate acts; (2) the falsity or misrepresentation of the alleged predicate acts; and (3) an intent to defraud.

a.      **Plaintiff Fails to Allege How Each Defendant Engaged in the Alleged Predicate Acts**

First, under RICO, a "pattern" of racketeering activity requires at least two predicate acts. 18 U.S.C. § 1961(5).  To establish a predicate act of mail fraud under 18 U.S.C. § 1341, Plaintiff must allege: "(1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United States mails for the purpose of executing the scheme." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 892 (10th Cir. 1991).  The elements of wire fraud similarly require that the defendant "use interstate wire, radio or television communications in furtherance of the scheme to defraud." *Id.*  Plaintiff alleges that there was a "pattern of racketeering activity" consisting of "predicate acts" of wire and mail fraud. *See* Am. Compl. ¶¶ 75–101.  These alleged instances of wire and mail fraud consist of Young Living's marketing emails and Young Living product shipments by unspecified "Defendants."

Again, the particularity requirements of Rule 9(b) apply to RICO predicate acts based on fraud. *Burnett*, 243 F. App'x at 395; *Tal*, 453 F.3d at 1263.  "Thus, a complaint alleging fraud [must] set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Tal*, 453 F.3d at 1263.  First, Plaintiff

has failed to allege the **identity** of the party making statements or the **falsity** of those statements to sufficiently allege predicate acts of mail and wire fraud. She cannot "lump together the defendants"—instead, "a RICO plaintiff must plead the specified facts **as to each defendant**." *Walker*, 938 F.3d at 738 (emphasis added) (marks omitted). Her group pleading is impermissible.

Moreover, many alleged predicate acts are purportedly performed by **other Young Living independent contractors**, such as Plaintiff—the very putative class that Plaintiff purports to represent. As just one example, she alleges that one of the purported predicate acts was a marketing email sent by another "Young Living Member" like herself. Am. Compl. ¶ 83; *see also id.* ¶ 80 ("a **Young Living Member** doing business as Choosing Healthy Life, Inc. sent a mass marketing email to Julie and all other Members throughout the United States using the Young Living virtual office listserv"); *Id.* ¶ 85 ("On June 27, 2017, a **Young Living Member** doing business as Max and Karen Hopkins, LLC sent a mass marketing email to Julie and the other Members . . . ."); *Id.* ¶ 88 ("On December 24, 2018, a **Young Living Member** doing business as Choosing Healthy Life, Inc. sent a mass marketing email to Julie and the other Members . . .). Clearly, if none of Defendants are actually performing the alleged "predicate act," the allegations simply cannot constitute specific facts as to **each** Defendant's alleged performance of the "predicate act." In sum, Plaintiff has not stated with particularity how **each** Defendant engaged in the alleged predicate acts and Counts I – III must therefore be dismissed.

### b. Plaintiff Fails to Allege Falsity or Misrepresentation with the Specificity Required by Rule 9(b).

Second, Plaintiff fails to allege falsity or misrepresentations connected with the marketing emails and product shipments sufficient to plausibly plead the requisite elements of mail and wire fraud, instead asserting that all of the emails and shipments were in furtherance of a "pyramid

scheme" and therefore inherently false and misleading.  *See, e.g.*, *id.* ¶¶ 70–73.  Plaintiff's allegations purport to identify "overt acts" of mail and wire fraud, but in reality simply describe business emails and shipments unconnected to any fraud or misrepresentations.  For example, with regard to the predicate acts of "wire fraud," Plaintiff alleges a number of general categories of actions allegedly committed by Young Living, including emails purportedly sent by Young Living, email receipt of confirmation of product orders, and placement of product orders through Young Living's website.  *See, e.g.*, *id.* ¶¶ 75–89.  But Plaintiff does not identify with particularity the alleged "misrepresentations" present in these alleged acts of wire fraud.  As one court has noted, "[w]ire fraud is not committed 'simply by sending false statements through email.'"  *Nielsen*, 2016 WL 407073, at *4.  Plaintiff's allegations thus do not meet the requirements of Rule 9(b).

Likewise, with regard to the alleged predicate acts of "mail fraud," Plaintiff alleges that "The **Defendants** shipped an order of essential oils" or "**Defendants** sent… a monthly newsletter." *See, e.g.*, Am. Compl. ¶¶ 91–100 (emphasis added).  Plaintiff does not, however, identify what is false or misleading about Young Living conducting its normal course of business by shipping a purchased order of essential oils or circulating a business newsletter.  *See L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc*., 863 F. Supp. 2d 1066, 1076–77 (D. Colo. 2012) (mail fraud allegations that do not "identify with any specificity the contents of the false representation" fail "to allege the predicate acts of mail fraud with the degree of particularity required by Rule 9(b)"). Conclusory allegations of a "pyramid scheme" cannot suffice to establish the predicate acts of mail or wire fraud.  Without specifically identifying the "who, what, where, when" of any **false statements or misrepresentations** purportedly **made by Young Living**, Plaintiff has not plausibly pled the predicate acts of mail and wire fraud with the requisite particularity required by

Rule 9(b) and has failed to state a claim.  _Burnett_, 243 F. App'x at 395 (dismissing RICO complaint for failing to plead with particularity where it "contained nothing more than general allegations that certain unknown mailings were false, without ever identifying the alleged falsity").

 For example, in _George v. Urban Settlement Services_, the Tenth Circuit found that when plaintiffs generally alleged that an individual, sometimes on specific dates, made phone calls, spoke with unidentified employees who made false representations, and that they "received letters through the mail from BOA containing false and misleading statements," such general allegations do not satisfy Rule 9(b)'s pleading requirements.  833 F.3d 1242, 1255–56 (10th Cir. 2016); _see also Kaplan v. Archer_, No. 11-CV-02094-PAB-CBS, 2012 WL 3277170, at *10 (D. Colo. July 3, 2012) ("General allegations such as that transfers of funds were accomplished through the use of the mail or that the mails were used in connection and in furtherance of the enterprise are insufficient to meet the particularity requirements of Rule 9(b).").

 Here, Plaintiff's allegations regarding mail and wire fraud fall short of the specificity required by Rule 9(b).  For instance, Plaintiff's mail fraud allegations relate to the shipment of Young Living products to Plaintiff.  _See_ Am. Compl. ¶¶ 94–100.  Like the allegations in _George_, these general allegations fail to provide the particularity required by Rule 9(b), including that plaintiffs must state the "time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  _George_, 833 F.3d at 1254. Therefore, Counts I – III must be dismissed.

   **c. Plaintiff Has Not Alleged Intent to Defraud with the Specificity Required by Rule 9(b).**

 Plaintiff also fails to adequately allege each Defendant's purported intent to defraud Plaintiff.  RICO claims sounding in fraud require establishing each defendant's intent to defraud.

_Tal_, 453 F.3d at 1263 (actionable fraud for RICO requires establishing the defendant's knowledge and intent).  And although intent may be pled generally under Rule 9(b), the rule at least requires a plaintiff to allege specific facts sufficient to raise an inference of fraudulent intent.  _Tuchman v. DSC Commc'ns Corp._, 14 F.3d 1061, 1068 (5th Cir. 1994) ("[P]leading scienter requires more than a simple allegation that a defendant had fraudulent intent.  To plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud."); _see also Ogles v. Sec. Benefit Life Ins. Co._, 401 F. Supp. 3d 1210, 1225 (D. Kan. 2019) ("To survive a motion to dismiss, conclusions must be supported by facts from which an inference of fraud can be drawn.").

Here, Plaintiff's complaint is wholly lacking in specific factual allegations to infer Defendants' intent to engage in a pattern of mail and wire fraud.  Although Plaintiff conclusorily alleges that Defendants created misleading marketing materials and promoted a fraudulent "scheme," she identifies no specific marketing or promotional materials and no alleged misrepresentations in any marketing materials created or approved by Defendants.  _See, e.g._, _Farlow v. Peat, Marwick, Mitchell & Co._, 956 F.2d 982, 990 (10th Cir. 1992) (generalized allegations of unspecified and undated misleading materials were insufficient to plead mail fraud with particularity).  Instead, she essentially asserts, without support, that even if there are no misrepresentations relating to the marketing emails and shipments enumerated in paragraphs 75 to 101 of the Amended Complaint, all of Young Living's marketing emails and product shipments are acts of mail and wire fraud because they are in support of the alleged Young Living "pyramid scheme."  This cannot meet the pleading standard of Rule 9(b) because to reach such a conclusion requires speculation and conjecture.  _See Waddell & Reed Fin., Inc. v. Torchmark Corp._, 223 F.R.D. 566, 604 (D. Kan. 2004) ("An inference of fraudulent intent is only reasonable, however,

where there exists a "probability that the conclusion flows from the proven facts . . . "[a]n inference is unreasonable where the jury must engage "in a degree of speculation and conjecture that renders its findings a guess or mere possibility.") (citations omitted).

Plaintiff's allegations are particularly lacking against the Individual Defendants. Notably absent from the Amended Complaint are any allegations of involvement by any specific entity other than Young Living regarding the alleged mail fraud, *see, e.g.*, Am. Compl. ¶¶ 91–101 (alleged conduct vaguely referring to "Defendants" without specifying which Defendant), and regarding wire fraud, Plaintiff alleges only that Defendant "Young Living" conducted a pattern of racketeering, and makes no mention of any other Defendants. *See e.g., id.* ¶¶ 75–90 (referring only to "Young Living"). At most, Plaintiff conclusorily asserts, without any supporting factual allegations, that Young Living's CEO and COO facilitate predicate acts of mail and wire fraud merely by virtue of their involvement with Young Living's corporate business. *See, e.g., id.* ¶ 53.

In sum, Plaintiff alleges that Defendants committed fraud by knowingly promoting and/or operating an illegal pyramid scheme but does not set forth any facts plausibly establishing that, at all relevant times, each **Defendant** knew Young Living was an illegal pyramid scheme (or was recklessly indifferent to that fact) and promoted Young Living anyway, with the intent to defraud others. Having failed to plead intent to defraud with the requisite particularity required by Rule 9(b), Plaintiff's RICO claims against Defendants should be dismissed.

### 3. *Plaintiff Fails to Plausibly Plead an Alleged Agreement Between the Individual Defendants to Support a Conspiracy*

Plaintiff's Count II RICO conspiracy claim fails not only for the reasons explained above, *see* <u>Tal</u>, 453 F.3d at 1270 (when underlying § 1962(c) RICO claim fails, RICO conspiracy claim fails as a matter of law), but because Plaintiff failed to adequately plead that the Individual

Defendants formed an agreement to commit mail and wire fraud.  "[B]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement."  *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992); *see also Albright v. Att'y's Title Ins. Fund*, 504 F. Supp. 2d 1187 (D. Utah 2007) ("To establish RICO conspiracy liability, plaintiffs must show the existence of an enterprise, along with the following two elements: (1) knowledge of the corrupt enterprise's activities, and (2) agreement to facilitate those activities."); *United States v. Hampton*, 786 F.2d 977, 978 (10th Cir. 1986) ("The object of a RICO conspiracy must be to violate a substantive RICO provision."); *Weiszmann v. Kirkland & Ellis*, 732 F. Supp. 1540, 1546 (D. Colo. 1990) ("Although conspiracy to violate RICO is not an averment enumerated under the particularity requirement of Fed. R. Civ. P. 9(b), a plaintiff must nevertheless provide some factual basis for a claim that a defendant conspired with another.").

For example, in *Malvar Egerique v. Chowaiki*, the court concluded that when the plaintiff alleged that two defendants "did business together on two separate occasions" and further alleged in conclusory terms that the defendants "conspired" and "agreed" with one another, "such allegations are plainly insufficient to show a RICO conspiracy."  *Malvar Egerique v. Chowaiki*, No. 19 CIV. 3110 (KPF), 2020 WL 1974228, at *21 (S.D.N.Y. Apr. 24, 2020).  And in *Elsevier Inc. v. W.H.P.R., Inc.*, the court considered a RICO conspiracy claim against a group of defendants who allegedly purchased academic journals at the discounted price for individuals, rather than the higher price for institutions, and then resold those journals to institutions at a profit.  *See Elsevier, Inc.*, 692 F. Supp. 2d 297, 302 (S.D.N.Y. 2010).  The court concluded the RICO conspiracy claim could not survive a motion to dismiss because the complaint "contain[ed] nothing more than a

conclusory allegation of an agreement among defendants and a further allegation that each of the individual defendants committed certain discrete acts of fraud." *Id.* at 307.

Here, Plaintiff's complaint pleads only sweeping and conclusory allegations regarding a purported meeting of the minds to engage in a general RICO conspiracy. *See, e.g.*, Compl. ¶¶ 51, 62. Although Plaintiff conclusorily states more than ten times that Defendants "agreed" to engage in an alleged conspiracy, there are no factual allegations in the Amended Complaint supporting that contention. Rather, as explained above, the allegations merely underscore the fact that the Individual Defendants were acting in their roles as employees of Young Living and do not suggest any sort of agreement existed between Defendants. Further, there are no factual allegations to suggest that the Individual Defendants engaged in any predicate acts of mail or wire fraud, let alone agreed to conspire to do so. Moreover, while Count II states that the Individual Defendants "intended to or agreed (*see* ¶¶ 60–65) to further an endeavor of the Operator/Manager(s) which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c)) and adopted the goal of furthering or facilitating the criminal endeavor," Am. Compl. ¶ 126, Plaintiff again violates Rule 9(b) by failing to identify what that purported "criminal endeavor" is. Count II should be dismissed.

## IV.   CONCLUSION

For the reasons stated above, Defendants respectfully request the Court grant this motion to dismiss Plaintiff's RICO claims against Defendants under Rule 12(b)(6) and/or Rule 9(b).

Dated:  July 24, 2020

Respectfully submitted,

By: */s/ Thomas M. Melsheimer*
Thomas M. Melsheimer (*Pro Hac Vice*))
TX Bar No. 13922550
tmelsheimer@winston.com
John C.C. Sanders, Jr (*Pro Hac Vice*))
TX Bar No. 24057036
jsanders@winston.com
Katrina G. Eash (*Pro Hac Vice*))
TX Bar No. 24074636
keash@winston.com
John Sullivan (*Pro Hac Vice*)
TX Bar No. 24098485
jsullivan@winston.com
**Winston & Strawn LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Phone:  214-453-6500
Fax:  214-453-6400

Mary McCarthy (*Pro Hac Vice*)
IL Bar No. 6306546
**Winston & Strawn LLP**
35 W. Wacker Drive
Chicago, IL 60601-9703
Phone:  312-558-5600
Fax:  312-558-5700

Robert S. Clark
Jeffrey J. Hunt
David C. Reymann
Bryan S. Johansen
**PARR BROWN GEE & LOVELESS**
101 S 200 E Ste 700
Salt Lake City, UT 84111
Phone:  801-532-7840
Fax:  801-532-7750
rclark@parrbrown.com
jhunt@parrbrown.com
dreymann@parrbrown.com
bjohansen@parrbrown.com
*Counsel for Defendants*

26

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on July 24, 2020, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

Dated:   July 24, 2020

By: */s/ Katrina G. Eash*
Katrina G. Eash

*Attorney for Defendants*