Austin Tighe (*pro hac vice* pending)
  atighe@nixlaw.com
**NIX PATTERSON, LLP**
3600 N Capital of Texas Highway
Suite B350
Austin, Texas 78746
Telephone: 512.328.5333

Robert E. Linkin (*pro hac vice*)
  rlinkin@dwmrlaw.com
**DUGGINS WREN MANN & ROMERO, LLP**
600 Congress Avenue, Ste. 1900
P.O. Box 1149
Austin, Texas 78767-1149
Telephone: 512.744.9300

J. David Rowe (*pro hac vice*)
  drowe@dbcllp.com
**DUBOIS, BRYANT & CAMPBELL, LLP**
303 Colorado Street, Suite 2300
Austin, Texas 78701
Telephone: 512.457.8000

Jason A. McNeill (9711)
  mcneill@mvmlegal.com
Christopher M. Von Maack (10468)
  vonmaack@mvmlegal.com
**MCNEILL | VON MAACK**
175 South Main Street, Suite 1050
Salt Lake City, Utah 84111
Telephone: 801.823.6464

Attorneys for Plaintiff

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **JULIE O'SHAUGHNESSY, individually, and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**YOUNG LIVING ESSENTIAL OILS, LC D/B/A YOUNG LIVING ESSENTIAL OILS, MARY YOUNG, and JARED TURNER,**<br><br>**Defendants.** | **OPPOSITION TO DEFENDANTS' FRCP 12(b)(6) AND 9(b) MOTION TO DISMISS**<br><br><br><br>**Case No. 2:20-cv-00470-HCN-DBP**<br><br>**District Judge Howard C. Nielson, Jr.**<br><br>**Magistrate Judge Dustin B. Pead** |

Pursuant to DUCivR 7-1(b), Plaintiff Julie O'Shaughnessy, individually, and on behalf of all other similarly situated ("Plaintiff"), files this Opposition to Defendants' 12(b)(6) and 9(b) Motion to Dismiss (Doc. No. 98).  *See* DUCivR 7-1(b).

# I.  INTRODUCTION

Defendants' motion to dismiss is as convoluted as their illegal pyramid scheme.  First, Plaintiff's RICO claims are not barred as a matter of law by the PSLRA.  Not all investments in pyramid schemes are securities.  The analysis required to determine whether Plaintiff's Young Living Essential Rewards Membership constitutes a "security" under the *Howey* test is a fact-intensive one.  Defendants ignore this test, choosing instead to rely upon evasive and distinguishable case law.  Defendants cannot and do not establish that as a matter of law, Plaintiff's Young Living Essential Rewards Membership constitute a "security".  Therefore, at the pleadings stage, without the requisite fact-intensive analysis, Plaintiff's RICO claims cannot be barred by the PSLRA.  Moreover, even a cursory review of the Amended Complaint makes clear that any profits class members would supposedly receive were not to come from "the efforts of others" (the third prong of the *Howey* test), but rather from the efforts of putative class members engaged in a never-ending cycle of membership recruitment.  Where that is the case, courts in this Circuit and others have rejected the "security" argument.

Second, Defendants rely on outdated and inapplicable case law in arguing that the Amended Complaint does not adequately allege substantive RICO claims or a RICO conspiracy claim.  Defendants argue they and their racketeering activity are not distinct from the enterprises alleged, and that the Amended Complaint—a thoroughly detailed forty-page document—fails to adequately provide the detail required under Rule 9(b).  These arguments are unpersuasive because (a) the requisite distinctness between persons/Defendants and enterprises is sufficiently defined and adequately alleged, and (b) the requirements of Rule 9(b), are repeatedly met.  This is not a "garden-variety" breach of contract, but rather a long, systemic pattern of illegal conduct

2

perpetuated by the two individual defendants (Young and Turner) through the conduct of their LC, and their 501(c)(3) Foundation.  As demonstrated below, Plaintiff has adequately alleged all of the elements for civil RICO substantive violations under section 1962(c), and for a civil RICO conspiracy under section 1962(d).  Defendants simply do not meet the high bar for 12(b)(6) or 9(b) dismissal.

## II.  STANDARD OF REVIEW

In *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008), the Tenth Circuit discussed the Supreme Court's rulings in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), stating that the burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly,* 127 S.Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

According to *Robbins*, the Supreme Court has sought to find a middle ground between "heightened fact pleading" on the one hand (which is expressly rejected), and allowing complaints that are no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action,", on the other and which the Court stated "it will not do."  *Id.*, at 1247, *quoting Twombly*. In *Robbins*, the Tenth Circuit noted that *Twombly* reiterates the bedrock principle that a judge ruling on a motion to dismiss must accept all allegations as true, and may not dismiss on the ground that it appears unlikely the allegations can be proven; in fact, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Id.*

Moreover, civil RICO claims are to be liberally construed.  The Supreme Court has repeatedly emphasized the breadth of the RICO statute:

> RICO is to be read broadly.  This is the lesson not only of Congress' self-consciously expansive language and overall approach, but also of its express admonition that RICO is to be liberally construed to effectuate its remedial purpose, Pub. L. 91-452, §904(a), 84 Stat. 947.  The statute's remedial purposes are nowhere more evident than in the provisions of a private action for those injured by racketeering activity.

*Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479, 497-98 (1985); *Boyle v. United States*, 556 U.S. 938, 944 (2009) (RICO is to be "liberally construed to effectuate its remedial purposes").

Finally, it is axiomatic that in considering 12b6 motions, courts "accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view those facts in the light most favorable to the nonmoving party."  *Maher v. Durango Metals, Inc*., 144 F.3d 1302, 1304 (10th Cir. 1998).

## III.  ARGUMENT

### A.   Plaintiff's Claims Are Not Barred by PSLRA Because the Illusory Profits Promised by Defendants Were to Have Come from the Efforts of the Plaintiff Herself.

Defendants blithely assert in conclusory fashion that Plaintiff's RICO claims are barred by the PSLRA because Plaintiff's Young Living Essential Rewards Membership is a "security."  (*See* Doc. No. 98 at 2, 7).  Defendants fail to establish that in their motion.  Historically, the determination of whether a business opportunity constitutes a security "depends on whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others."  *Securities & Exchange Commission v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946).  While there does not appear to be a serious dispute as to whether there was an "investment of money" in a "common enterprise"(the first two prongs of the *Howey* test), the facts alleged in

4

the Amended Complaint also make clear that any profits class members would supposedly receive were not to come from "the efforts of others" (the third prong of the *Howey* test); instead, those profits were to come from the efforts of putative class members such as Plaintiff, who were directed to engage in a never-ending cycle of membership recruitment.  Where that is the case, courts in this Circuit and others have rejected the "security" argument.

Defendants may fixate on the word "solely", but the Tenth Circuit has noted that the word "solely" is "not be read as a strict or literal limitation on the definition of an investment contract, but rather must be construed realistically, so as to include within the definition those schemes which involve in substance, if not form, securities." *Crowley v. Montgomery Ward & Co.*, 570 F.2d 877, 879 (10th Cir. 1978).  Stated differently, in determining whether a scheme constitutes a security, "consideration must be given to 'economic reality' and the word 'solely' must not be given an unduly restrictive application." *Crowley*, 570 F.2d at 879.  The word "solely" "more or less means 'significant[ly].'" *Foxfield Villa Assocs., LLC v. Robben*, ___ F.3d ___, 2020 WL 4380631, at *6 (10th Cir. 2020).  "An investment satisfies this third prong when the efforts made by those other than the investor are the ones which affect significantly the success or failure of the enterprise." *Banghart v. Hollywood Gen. P'ship*, 902 F.2d 805, 807 (10th Cir. 1990).  The Supreme Court has clarified that "when we held that 'profits' must 'come solely from the efforts of others,' we were speaking of the profits that investors seek on their investment, not the profits of the scheme in which they invest." *S.E.C. v. Edwards*, 540 U.S. 389, 394 (2004).

Against that backdrop, Defendants' motion fails to articulate precisely how an interest in their particular pyramid scheme constitutes a "security."  More precisely, Defendants fail to explain how an interest in Young Living satisfies the third prong of the *Howey* test.

5

First, Defendants summarily assert with scant analysis that the court in *LifeVantage* "correctly held that investment in a pyramid scheme is itself a security." (Doc. No. 98 at 7.) That is an overgeneralization. No court in the Tenth Circuit has declared that all pyramid schemes are *per se* securities. Indeed, this Circuit has explicitly recognized that in determining whether an investment is a security, "each case must be analyzed on its own facts." *See Maritan v. Birmingham Props.*, 875 F.2d 1451, 1457 (10th Cir. 1989). And while Defendants do acknowledge the *LifeVantage* court made that determination "without any particular analysis or assessment of the underlying specifics of the allegations," (Doc. No. 98 at 7), they fail to acknowledge that the lack of analysis was because the parties effectively *conceded* that a LifeVantage membership was a security. *See Smith v. LifeVantage Corp.*, 429 F. Supp 3d 1275, 1282 (D. Utah 2019) ("Defendants do not argue in their motion to dismiss that a LifeVantage Distributorship is not a security. Plaintiffs allege that the [distributorship] is an offering for investment and a security under federal securities laws.").

Here, any reasonable interpretation of the allegations contained in the Amended Complaint make clear that a Young Living Essential Rewards Membership is not a security. Young Living Essential Rewards Members are not passive participants to whom profits flow. They are the source of any profits. Moreover, the Amended Complaint specifically includes allegations that the "class members did not join Young Living through any type of investment contract," the members are designated as "independent contractors," and that they are responsible for the development of their business, including the methods of sale and recruitment of new members. (*See* Doc. No. 59 ¶ 8.) Likewise, the Amended Complaint alleges that "the financial success of any Young Living Member is overwhelmingly dependent on the recruitment of new people into the Young Living

sales force." (*Id.* ¶¶ 22, 27, 34.)  Perhaps most notably, Young Living Members are expected to obtain profits on their own sales and commissions on the downline sales, and not from a return on the purchase of the sale kit and monthly PV.  (*See id.* ¶¶ 31, 35 ("Members do not earn any commissions on the PV they purchase from Young Living. . . .  Importantly, no Member may earn a commission except through new member recruitment.").)  Thus, to the extent Plaintiff and Class Members could expect to earn any profits, those profits were to come solely from the never-ending requirement for them to constantly recruit new members into the Young Living scheme.  Under the *Howey* test, that fact is fatal to Defendants' claim that this is a security.

Indeed, a number of cases looking at pyramid schemes and MLM-based distributorships similar to the Young Living scheme have found they are not securities.  For example, in *Ranieri v. AdvoCare Int'l, L.P.*, the Northern District of Texas held that MLM-based distributorships were not securities because distributors were not merely passive participants as they were required to constantly recruit new participants through their own solicitation and marketing efforts.  *Ranieri v. AdvoCare Int'l, L.P.*, 336 F. Supp. 3d 701, 714–15 (N.D. Tex. 2018).  In *Kerrigan v. ViSalus, Inc.*, yet another federal district court concluded that participation in an alleged pyramid scheme did not constitute a "security," where individual distributors relied on their own efforts for success, had freedom in how they promoted products, and the types and amounts of bonuses offered were directly dependent on the recruiting success of the individual distributors.  *Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580 (E.D. Mich. 2015).  And numerous other federal circuit and district courts have held likewise.[1]

---

[1] *See U.S. v. Holtzclaw*, 950 F. Supp. 1306 (S.D. W. Va. 1997) (distinguishing *Glenn Turner* and *Koscot* and concluding that the pyramid scheme did not involve a security because all of the essential efforts were performed by the investors themselves), *vacated in part on other grounds*,

In contrast, cases cited by Defendants are distinguishable because they do not involve scenarios like ours, where profits were expected to come from the efforts of the pyramid scheme victims.  For example, in *SEC v. Int'l Loan Network, Inc.*, the SEC's allegations described a scheme in which participants were required to invest in *a financial distribution network* at various levels and that "profits for CFBS investors are expected to accrue, if not solely, at least predominantly from the efforts of others."  968 F.2d 1304 (D.C. Cir. 1992).  And in *SEC v. Glenn W. Turner Enters, Inc.* (upon which Defendants heavily rely in their motion), the pyramid scheme involved motivational training where the participant was not expected to take any active part in sales or recruitment, other than encouraging prospective buyers to attend an initial meeting—that is, "[t]he Dare people, not the purchaser-'salesmen,' run the meetings and do the selling."  474 F.2d 476 (9th Cir. 1973); *see also Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776 (9th Cir. 1996) (stating "we focused on the fact that the scheme's promoters controlled the methods by which the product was sold and new members were recruited" and that "Plaintiffs claim they were taught to sell Omnitrition's 'proven plan of success' and to 'catch a wave of return that was far beyond anything that [they] were involved in personally'" (alteration in original)); *LifeVantage*, 429 F. Supp. 3d at 1282-83 (D. Utah 2019) (involving specific allegations that the scheme was "an

_____

131 F.3d 137 (4th Cir. 1997) (*per curiam*); *see also Lino v. City Investing Co.*, 487 F.2d 689, 693 (3d Cir. 1973) (finding an arrangement embodying characteristics of a pyramid scheme and traditional franchise agreement was not a security because the efforts necessary to obtain profits by finding recruits were significant); *Villeneuve v. Advanced Bus. Concepts Corp.*, 730 F.2d 1403, (11th Cir. 1984) (*per curiam*) (concluding the distributorship for sale of self-watering planters was not a security because the distributor had to make substantial efforts toward the profit and not through the efforts of the promoter); *Piambino v. Bailey*, 610 F.2d 1306, 1319 (5th Cir. 1980) (finding that a genuine issue of material fact existed as to whether the distributorships were securities where the individual distributors must exert efforts, "else there would be no need for help").

offering for investment and a security" and analyzing that profits derived from "the Plan" rather than the investment); *SEC v. CKB168 Holding, Ltd.,* 210 F.Supp.3d 421, 451 (E.D.N.Y. 2016) (holding on summary judgment, an interest in pyramid scheme was a security because *inter alia*, "CKB investments were also securities because defendants told investors that by purchasing business packs they could acquire pre-IPO CKB stock.").

Thus, while some courts certainly have held memberships in a pyramid scheme to be a "security", those decisions relied on facts far different than ours. Young Living Essential Rewards Members such as Plaintiff were actively involved, deemed to be independent contractors, and expected to work relentlessly in their fruitless effort to make money through the recruitment of others into the Young Living Scheme. Accordingly, Plaintiff's Young Living Essential Rewards Membership is not a security, and the PSLRA's RICO bar does not apply, at the very least not at the pleadings stage without a requisite fact-intensive analysis.[2]

**B.    Plaintiff's RICO Claims Have Been Adequately Pleaded.**

Defendants alternatively argue that Plaintiff's RICO claims fail because Plaintiff has not sufficiently pleaded (1) distinctness between the Defendant and "enterprise"; (2) distinctness between the enterprise and the alleged predicate acts; (3) predicate acts amount to wire or mail fraud as to each Defendant; and (4) an alleged agreement to support a conspiracy claim. (*See* Doc.

---

[2] Plaintiff initially pleaded her claims under existing Fifth Circuit precedent regarding whether an interest in a pyramid scheme constituted a security. In the unlikely event the Court agrees with Defendants' assertion that Plaintiff's Young Living Essential Rewards Membership is a security, and thus her RICO claims are preempted by the PSLRA, Plaintiff respectfully requests leave to amend her Complaint to include claims for Defendants' multiple registration violations (Section 12(1) of the Security Act), as well as violations of state and federal securities law related to fraud in the sale of securities..

No. 98 at 2-3.)  Each of these arguments ignores Plaintiff's actual Amended Complaint, which clearly and properly alleges Plaintiff's RICO claim, and instead focuses on a hypothetical complaint Defendants wish Plaintiff had filed.  As such, each of these arguments is without merit.

      1.     Plaintiff Adequately Pleads Persons "Distinct" From the Enterprises.

Defendants assert that the "enterprises" alleged in the Amended Complaint are not distinct from the alleged "persons," and thus the enterprise element is not adequately alleged.  (*See* Doc. No. 98 at 12–14.)  In doing so, Defendants ignore accepted Supreme Court, and substantial Circuit, authority supporting the finding of "distinctness" between RICO persons, as defined in 18 U.S.C. § 1961(3), and "enterprises" as defined in 18 U.S.C. § 1961(4).[3]  To be sure, each formulation of defendants and enterprises in the Amended Complaint is properly alleged and aligned with long-accepted authority.

Specifically, Count I alleges two alternative bases of civil RICO liability.  (*See* Doc. No. 59 ¶¶ 117–18.)  The first basis (referred to as Theory A by Defendants in their motion) is that defendants Young and Turner are named as the section 1962(c) defendants, and also together form an association-in-fact enterprise.  (*See id.*)  The second basis (referred to as Theory B by Defendants) is that defendants Young and Turner, as individuals, are the Defendants, and the legal entity Young Living LC is the enterprise.  (*See id.*)  In addition, Count Three of the Amended alleges the Young Living Foundation, also a legal entity, is the enterprise, and Young Living LC,

---

[3] Pursuant to RICO section 1961(3) "person" is defined to include "any individual or entity capable of holding a legal or beneficial interest in property."  18 U.S.C. § 1961(3).  RICO section 1961(4) "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity"  18 U.S.C. § 1961(4) (emphasis added).

a different legal entity, is the defendant.  (*See id.* ¶ 131.)  As demonstrated below, each of these alternative bases is legally sufficient and pleads persons "distinct" from the enterprise in fact.

  a.  Count I:  Multiple Formulations of Enterprise Do Not Implicate Rule 9(b) and are Sufficiently Pleaded.

  Defendants attempt to sidestep their own cursory arguments regarding distinctness, first asserting that both Count I bases are "conflicting" and thus fail to meet the particularity requirements of Rule 9(b).  (*See* Doc. No. 98 at 13–14.)  But the two enterprise/person formulations are alternatives, and are pleaded as such.  (*See* Doc. No. 59 ¶ 118).  Each is an independent, recognized method to allege a section 1962(c) violation.  Accordingly,  Defendants' arguments fail for numerous reasons.

  First, Defendants state that the heightened Rule 9(b) standards apply when the enterprises are alleged in the alternative, but offers no relevant case law in support of this proposition.  The out-of-circuit district court case cited by Defendants, *O & G Carriers, Inc. v. Smith*, 799 F. Supp. 1528 (S.D.N.Y. 1992), is inapposite and not authority for this proposition.  In *O & G Carriers,* the complaint was held to be deficient because it alleged "all of the defendants conducted or participated in the conduct of one or more of the enterprises through the above-described patterns of racketeering activity, ... in violation of 18 U.S.C. Sec. 1962(c)"  *Id.* at 1541–42 (emphasis added).  In contrast, here the Defendants in Count One of the Amended Complaint are specifically described and limited to Young and Turner, unlike the "broad brush" allegations of undefined multiple defendants as described in *O & G Carriers*.  Moreover, Rule 9(b) does not even apply to allegations of alternative *enterprises*, as that Rule's application is limited to the pleading of mail fraud/wire fraud as predicate acts.  *See Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (when

addressing substantive civil RICO violations with fraud predicates, "the particularity requirement of Rule 9(b), Federal Rules of Civil Procedure, only applies to claims of mail and wire fraud").

Second, Defendants' argument that Rule 9(b) applies to the pleading of alternative enterprises does not comport with the Supreme Court's holding in *Boyle v. U.S*, in which the Court stated that the enumeration of included enterprises in section 1961(4) "is obviously broad, encompassing '*any* ... group of individuals associated in fact.'" 556 U.S. at 944 (emphasis added). The "term 'any' ensures that the definition has a wide reach, … and the very concept of an association-in-fact is expansive." *Id.*; *see also George v. Urban Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016) ("RICO *broadly* defines 'enterprise' as 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" (quoting18 U.S.C. § 1961(4))); *see also Church Mut. Ins. Co. v. Phillip Marshall Coutu*, No. 17-CV-00209-RM-NYW, 2018 WL 822552, at *8 (D. Colo. Feb. 12, 2018), report and recommendation adopted in part, No. 17-CV-00209-RM-NYW, 2018 WL 1517022 (D. Colo. Mar. 28, 2018) (finding sufficient allegation of an association-in-fact enterprise).

In fact, the Tenth Circuit recently held in *Safe Streets Alliance v. Hickenlooper,* 859 F.3d 865, 882–83 (10th Cir. 2017), that such alternative enterprise theories do not undermine well pleaded association-in-fact enterprises.  Given the broad interpretation of the term "enterprise", and the Tenth Circuit's recognition of pleading "alternative enterprise theories" in *Safe Streets*, Defendants' attempt to apply heightened Rule 9(b) particularity standards to the formulations of enterprises fails.

b.      Count One:  Defendants and Legal Entity Enterprise in Theory B Are Distinct.

Defendants' argument as to Theory B, that the legal entity enterprise and the individual defendants are not sufficiently distinct, is directly contrary to Supreme Court law.  In *Cedric Kushner Promotions, Ltd. v. Don King,* 533 U.S. 158 (2001) the Court held that the president and sole shareholder of a corporation alleged to be the enterprise was a "person" distinct from the legal entity enterprise subject to liability under RICO.  *Id.* 163–64.  The Court explained

> that a corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status.  And we can find nothing in the statute that requires more "separateness" than that.  *Cf. McCullough v. Suter,*757 F.2d 142, 144 (C.A.7 1985) (finding either formal or practical separateness sufficient to be distinct under § 1962(c)).

*Id.* at 163; *see also Ad-X Intern, Inc. v. Kolbjornsen*, 97 Fed. Appx. 263, 266 (10th Cir. 2004) (relying on *Cedric Kushner* to hold an individual defendant debtor legally distinct from his bankruptcy estate stating "RICO requirements are most easily satisfied when the enterprise is a formal legal entity")

Moreover, there is little question that Young Living LC is a legal entity.  *See* BLACK'S LAW DICTIONARY (6th ed. 1990) (defining the term "legal entity" to be an entity which "has sufficient existence in legal contemplation that it can function legally, be sued or sue and make decisions through agents as in the case of corporations.")   Accordingly, because the Defendants are individuals, *i.e.*, natural persons, and Young Living LC is a legal entity, the Defendants are distinct from the enterprise as alleged in Theory B.[4]

---

[4] *Whelan v, Winchester Prod. Co*., 319 F.3d 225, 229–30 (5th Cir. 2003), cited by Defendants as support for their position that the individuals and Young Living LC are not distinct, is not relevant factually.  There, the court addressed whether corporate defendants and agents were distinct from an association in fact consisting of the corporate defendants and its agents.

  c.  Count One:  Defendants, and the Association-in-Fact Enterprise in Theory A,  Are Also Distinct.

The Amended Complaint alternatively alleges that individual Defendants Young and Turner constitute an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are "a group of individuals associated-in-fact".  (Doc. No. 59 ¶ 117.)  Here, Plaintiff adequately alleges (*e.g., id.* ¶¶ 62(d), 117) the three structural features outlined in *Boyle* required to find an association-in-fact enterprise:  common purpose, relationships, and duration. *See Boyle,* 946 U.S. at 948; *Safe Streets Alliance*, 859 F.3d at 882–83.

The Amended Complaint further alleges that Young and Turner are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually conducted, participated in, engaged in, and operated and managed the affairs of an association-in-fact Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). That pattern of racketeering activity consisted of, but was not limited to, the specific acts of wire and mail fraud alleged.  (*See* Doc. No. 59 ¶¶ 75–101.)

Defendants argue there is no distinction made between the persons and the enterprise, and therefore Count I fails to plead a RICO claim against Young and Turner as a matter of law.  In doing so, Defendants ignore numerous federal court decisions holding that individuals—as defendants—may *also* legally constitute the members, or associates, of an association-in-fact enterprise.  In *Cullen v. Margiota*, 811 F.2d 698 (2d Cir. 1987), *overruled on other grounds*, the Second Circuit addressed precisely this issue. *Id.* at 729–30.  The court first  held it could "see no reason why a single entity could not be both the RICO 'person' and one of a number of members of the RICO 'enterprise.'" *Id.*  Next, the court noted that the definitions of both terms were "intentionally broad." *Id.* (*citing,* H.R. Rep. No. 1549, 91st Cong., 2d Sess. 56 (1970), *reprinted*

*in* 1970 USCCAN 4007, 4032).  The court further stated the very terms of § 1962(c) appear to envision that the same entity may be both the RICO "person" and a member of the "enterprise," since that section speaks of a "person ... associated with any enterprise."  *Id.*  Finally, the *Cullen* court concluded that although it had previously rejected the notion that an entity may be deemed "associated with" itself, there is neither a conceptual nor doctrinal difficulty in positing an entity associated with a group of which it is simply a part.  *Id.*

The Eighth Circuit ruled similarly on an enterprise/association-in-fact comprised of five entities, two of which were also defendants.  In *Atlas Pile Driving Co. v. DiCon Financial Co.*, 886 F.2d 986 (8th Cir. 1989), the court found distinctness with regard to the two enterprise constituent members who were also named as defendants, recognizing that a collective entity is something more than the members of which it is comprised.  *Id.* at 995.  The court noted that if five persons form an association-in-fact and engage in a pattern of racketeering activity such as drug smuggling and murder, an individual member "could never be prosecuted for violating RICO under the appellants' reasoning because he or she would not be considered distinct from the enterprise."  *Id.*  The court stated it did not believe that Congress envisioned that this type of conduct would be insulated from RICO prosecutions, and cited to other courts who had reached identical conclusions.  *Id.*; *see also St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 447 (5th Cir. 2000) (citing approvingly to *Atlas Pile Driving* for the principles that a collective entity is something more than the individual members of which it is comprised, and that a defendant may be both a person and a part of an enterprise).

Moreover, the well-accepted notion that an individual may be distinct from an association-in-fact enterprise of which she is a member is consistent the Supreme Court's holding in *Kushner.*

There, the Court stated "we do not quarrel with the basic principle that to establish liability under section 1962c, a plaintiff must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd.* v. King, 533 U.S. 158, 161 (2001).

Here, each individual Defendant, Young and Turner, is different and distinct from the association-in-fact they formed (which Plaintiff expects to discover also consists of others functioning with the Defendants/enterprise members).[5]   Likewise, the Amended Complaint adequately alleges that these persons have met the *Boyle* requirements of functioning as a continuing unit, with a common purpose, relationships and longevity.  (*See* Doc. No. 59 ¶¶ 62(d), 117.)  *See also United States v. Turkette*, 452 U.S. 576 (1981).   Just as in *Boyle*, where an association-in-fact enterprise consisted of four individual defendants who moved in and out of the enterprise, each individual was properly a RICO defendant *and* a member of the association-in-fact enterprise (which is collectively different than each individual himself).  So, too, are Young and Turner proper RICO defendants when associated with an enterprise consisting collectively of the singular Defendants (and likely others).[6]  This is certainly consistent with the Tenth Circuit's holding in *Safe Streets Alliance* where the court also found that individuals/entities were 'distinct' from an association-in- fact enterprise of which they were a part.  *Safe Streets Alliance,* 859 F.3d at 883.

---

[5] Two persons may constitute a valid association-in-fact enterprise.  Indeed, Section 1961(4) provides that even a single "individual" may be a valid enterprise.

[6] Indeed, Plaintiff expects to learn through discovery of additional individuals and entities which comprise the association-in fact enterprise*,* including "Essential Sciences Publishing" which was recently discussed in news reports regarding the Young Living Pyramid Scheme.

In sum, and consistent with *Kushne*r and *Boyle* and the Circuit law above, Young and Turner are distinct from the collective entity in which they participate, the association-in-fact enterprise.

> d.   Count Three:  The Young Living Foundation Legal Entity is Distinct From Young Living LC, a Different Legal Entity.

The Amended Complaint alleges that the Young Living Foundation, as a legal entity, constitutes an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c).  (*See* Doc. No. 59 ¶ 131.)  Young Living LC is a "person" within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), which individually conducted, participated in, engaged in, operated and managed the affairs of the Young Living Foundation through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c).  And that pattern of racketeering activity consisted of, but was not limited to, the acts of wire and mail fraud.  (*See* Doc. No. 59 ¶¶ 75–101.)

Because it is clear that Young Living LC, a limited liability company, is legally distinct from Young Living Foundation, a section 501(c)(3) corporation, Defendants do not even attempt to argue the two entities are not distinct.  Instead, Defendants argue that the "operation and management test" set forth in *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) is not satisfied because Defendants were participating in its own affairs, not the affairs of the Foundation enterprise.  This argument also fails.  The *Reves* "operation and management" test is broadly construed.  The Supreme Court stated that to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must only have some part in directing those affairs.  *Id.* at 179 (emphasis added).  In fact, the Tenth Circuit in *Safe Streets Alliance* held that "a plaintiff can easily satisfy *Reves* operation and management test by showing that an enterprise member played some

part—*even a bit part*—in conducting the enterprise's affairs." *Id.* at 884. Plaintiff's Amended Complaint clearly satisfies that minimal standard.

Defendants further argue that "an allegation of RICO liability under 1962I must indicate how the defendant used the alleged enterprise to facilitate the fraudulent conduct," citing to *Brannon v. Boatman's First Nat'l Bank*, 153 F.3d 1144, 1148–49 (10th Cir. 1998). While Plaintiff agrees that is a proper recitation of the law, it is also consistent with the well-pleaded allegations of the Amended Complaint, which clearly describes Defendants as using the Foundation for specific purposes, *i.e.*, "Defendants use the Foundation as entry into global markets through purportedly charitable endeavors, expanding the reach of the RICO scheme." (*See* Doc. No. 59 ¶¶ 62(b), 62(c).) Regardless, resolution of this issue is best served through the discovery process, not the dismissal process. *See George v. Urban Settlement Servs.*, 833 F.3d at 1253 (denying defendants' 12(b)(6) motion, noting that whether the *Reves* test was met was "a matter to be fleshed out in discovery").

2.      Plaintiff Adequately Alleges Enterprises Distinct From Predicate Acts

Defendants next argue that there is no distinction in the Amended Complaint between any of the enterprises and the predicate acts. This argument fails as well.

a.      Legal Entity Enterprises

The legal entity enterprises here have a discrete legal identity, created by documents pursuant to legal requirements of state and local jurisdictions, which are clearly different and distinct from predicate acts of mail and wire fraud. *United States v. Warner*, 498 F.3d 666, 697 (7th Cir. 2017) (stating when the enterprise under consideration is a legal entity, the enterprise element is satisfied by the mere proof that the entity does in fact have a legal existence).

18

Accordingly, there is little question the legal entity enterprises are distinct from the predicate activity.

b.     Association-in Fact-Enterprise

As to the "association-in-fact" enterprise alleged in Count One  (Theory A), Defendants argue that the "association-in-fact" enterprise pleaded by Plaintiff is not distinct from the predicate acts alleged in the Amended Complaint.  In doing so, Defendants rely primarily on pre- *Boyle* opinions, even though *Boyle* specifically clarified that an association-in-fact enterprise is by definition distinct from the predicate acts.  In *Boyle*, the Court made clear that a RICO enterprise does not have to exist for purposes other than to commit the wrongful acts giving rise to the complaint.  Specifically, the Court explained that "the existence of a RICO enterprise is an element distinct from the pattern of racketeering activity." *Boyle*, 556 U.S. at 957 (internal quotations omitted).  The Court further held that "evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce,'" and that "a pattern of racketeering activity [itself] may be sufficient in a particular case to permit a jury to infer the existence of an association-in-fact enterprise." *Id*. at 947, 951.

Accordingly, because the pattern of racketeering activity itself may be sufficient in a particular case to permit a jury to infer the existence of an association-in-fact enterprise, it is impossible to argue that an association-in-fact enterprise allegation fails by virtue of not being distinct from predicate acts.  Indeed, courts have repeatedly held that *Boyle* and *Turkette* resolved the issue, and so held a RICO association-in-fact to exist where the association was formed solely for the purpose of performing the alleged racketeering activity.  *See e.g.*, *United States v. Hutchinson*, 573 F.3d 1011, 1021 (10th Cir. 2009) ("Simply put, after *Boyle*, an association-in-

fact enterprise need have no . . . purpose or economic significance beyond or independent of the group's pattern of racketeering activity"); *Ouwinga v. Benistar 419 Plan Servs, Inc*., 694 F.3d 783, 794 (6th Cir. 2012) (holding that an association in fact enterprise can satisfy the enterprise requirement under RICO even if its sole purpose is to carry out a pattern of racketeering).

Even assuming, *arguendo*, such a "requirement" existed— that there be separate proof to show the enterprise element—the Amended Complaint would still be adequate, because it sufficiently describes additional facts including the structure and formation of the pyramid schemes, and how the Defendants functioned together with a common purpose with consensual decision making, in addition to the predicate acts. (*See, e.g.*, Doc. No. 59 at Introduction, ¶¶ 62, 117.) Thus, the association-in-fact enterprise as pleaded is adequately distinct from the racketeering activity. At the 12(b)(6) stage, that is all that is required.

3.     Plaintiff Adequately Pleads Predicate Acts

Defendants next argue that the Amended Complaint fails to allege (i) how each defendant engaged in the alleged predicate acts, and (ii) mail and wire fraud with the specificity required by Rule 9(b), including alleging an intent to defraud. Defendants' arguments miss the mark entirely, as they ignore the clear weight of authority that neither mail fraud nor wire fraud, alleged as predicate acts, are required to contain misrepresentations. Rather, such acts of mail and wire fraud are only required to be "caused" in furtherance of a scheme to defraud. Each of Defendant's ineffective arguments is addressed in turn.[7]

---

[7] Defendants make an off-hand remark that the "pattern of racketeering" itself was not plausibly alleged, but offer no arguments regarding either "relatedness" or "continuity." This is presumably because the Amended Complaint more than adequately alleges facts to support a finding of "relatedness" and "continuity" and Defendants have conceded as much. *See H.J. Inc. v. Northwestern Bell Telephone Co*., 492 U.S. 229, 242–43 (1989).

a.      The Amended Complaint Provides Rule 9(b) Notice As To Each Defendant.

Defendants first argue that Plaintiff fails to allege how each Defendant engaged in the alleged predicate acts, and instead engages merely in "group-pleading."  As background, Rule 9(b)'s purpose is "to afford [a] defendant fair notice" of a plaintiff's claims and the factual grounds supporting those claims.  *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997); *see also Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992) ("Allegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief.").  Here Plaintiff has provided Defendants with more than adequate notice as required by Rule 9(b).

b.      Wire Fraud Predicates

The Amended Complaint adequately alleges that each Defendant caused multiple predicate acts of wire fraud.  With regard to Count One and each of its bases, the two individuals who control Young Living LC—Mary Young, the CEO, and Jared Turner, Young Living's president and chief operating officer—are alleged as having caused those wirings and mailings.  (*See* Doc. No. 59 ¶¶ 117–22.)  The reference in the wire fraud acts (*see id.* ¶¶ 75-90) to "Young Living" having caused the wirings can only be meant to include the two principals who control Young Living (Young and Turner).  (*See id.* ¶¶ 10–11.)  Moreover, the Amended Complaint specifically alleged that each and every use of the U.S. mails or interstate wires was committed by Young, Turner, and Young Living LC, with the specific intent to defraud.  (*See id.* ¶ 73.)  The Amended Complaint also alleges, consistent with *Scheidt,* that if necessary, the facts as to which particular Young Living employee caused any particular e-mail are peculiarly within the opposing party's knowledge, and can be further determined through discovery.  (*See id.* ¶ 69.)

As to Count Three, Defendant "Young Living" is specifically described as causing multiple e-mails in furtherance of the scheme to defraud.  (*See id.* ¶¶ 131, 73, 75–90.)  These paragraphs allege, for example, wirings sent to Plaintiff and thousands of other members by Young Living promoting the pyramid scheme, including a list of cult-like events (*see id.* ¶ 76); e-mails to Plaintiff for her to place orders [from the Young Living website hosted in New York] for the monthly requirement to purchase the product (*see id.* ¶ 77); a mass marketing e-mail from Young Living's website to Plaintiff and thousands of other members for recruiting purposes (*see id.* ¶ 81); and Young Living hosting a Facebook Live event offering training to members throughout the United States relating to the recruiting.  (*See id.* ¶ 89).

Accordingly, there is no group pleading here; rather, the strictures of Rule 9(b) are met because the predicate acts of wire fraud sufficiently allege the "who, what, when, where, and how" of the alleged fraud.

c.      Mail Fraud Predicates

While the specific mail fraud acts are alleged as being affected by "Defendants," in paragraphs 91-99 of the Amended Complaint, they are still not a prohibited "group pleading".  Indeed,  Count One limits "Defendants" to the two principals (Young and Turner) who together controlled the corporate enterprise Young Living LC, and they are alleged to be closely working together.  (*See* Doc. No. 59 ¶¶ 62(a), 62(d), 73.)  While the "specific acts of mail fraud" allege "Defendants" collectively, the Defendants have proper notice with regard to their individual participation in the mail fraud scheme, as alleged above.  *See* 10 William Meade Fletcher, *et al.* Fletcher Cyclopedia of the Law of Corporations § 4877 (2012 ed.) (stating that the acts and

mental states of its agents and employees will be imputed to the corporation where such natural

persons acted on behalf of the corporation).

       d.      The Amended Complaint Sufficiently Alleges Specificity to Meet Rule 9(b) Because the Acts of Mail and Wire Fraud Themselves Do Not Need to Contain False Statements, Provided They Are In Furtherance of a Scheme to Defraud.

            i.      Falsity or Misrepresentations

Defendants argue here that Plaintiffs have failed to allege any falsity or misrepresentation

connected with the marketing e-mails, newsletters, product shipments, etc. This is simply wrong.

Mail and wire fraud are predicate acts of racketeering activity under RICO and occur "whenever

a person, having devised or intending to devise any scheme or artifice to defraud, uses the mail [or

interstate wires] for the purpose of executing such scheme or artifice or attempting so to do...."

That statutes further proscribe a person "who knowingly *causes* to be delivered by mail", or for

interstate wires, "*causes* to be transmitted." *See* Section 1343. Where one does an act with

knowledge that the use of the mails will follow in the ordinary course of business, or where such

use can reasonably be foreseen, even though not actually intended, then he "causes" the mails to

be used. *See Pereira v. United States*, 347 U.S. 1, 9 (1954).

Defendants' argument is directly contrary to Supreme Court law on the issue of whether

the mailings and wirings must themselves contain falsities. The Supreme Court has stated that the

gravamen of the offense is the scheme to defraud, and any "mailing that is incident to an essential

part of the scheme satisfies the mailing [or wiring] element, even if the mailing [or wire] itself

contains no false information." *Bridge v. Phoenix Bond & Indemnity Co.,* 553 U.S. at 647 (quoting

*Schmuck v. United States*, 489 U.S. 705, 712 (1989) (alteration in original);[8] *see also* Parr v. United States, 363 U.S. 370, 390 (1960) (acknowledging that "innocent" mailings—ones that contain no false information—may supply the mailing element); *United States v. Trammell*, 133 F.3d 1343, 1353 (10th Cir. 1998) (Accord).

As such, contrary to Defendants' argument, Plaintiff does not need to "identify with particularity the alleged 'misrepresentations' present in the alleged acts of wire fraud." The Supreme Court has specifically held there is no need at all for the mailings or wirings to contain false information, as "innocent" mailings—ones that contain no false information—may supply the mailing element. Even accepting, *arguendo*, Defendants' assertion that the actual wirings and mailings may not have contained facts which were false, it makes no matter because the mailings and wirings described above were clearly made, and clearly intended to mislead Plaintiff into participation in an inherently unlawful pyramid scheme. And that is enough.

ii.    Intent to Defraud

Defendants finally argue that the scheme to defraud is inadequately alleged. Again, wrong. Young Living's intent to defraud is clearly alleged through the description of the Young Living pyramid scheme, as well as its improper encouragement of the recruitment of members over retail sales. (*See* Doc. No. 59 ¶¶ 22–23, 24–36.) Plaintiff further alleges, *with specificity*, that the overwhelming majority of Young Living Members lose money by paying far more into the scheme than they receive, thus enriching those few at the top and the Defendants themselves—the very definition of an illegal pyramid scheme. (*See id.* ¶ 37.) Finally, the Amended Complaint

---

[8] The Court in *Bridge*, discussed *supra*, affirmed a mail fraud conviction finding that plaintiffs/bidders were not required to show that they relied on defendant's alleged misrepresentations to the county.

specifically describes the false promises of vast financial rewards undergirding Defendants' pyramid scheme, which are impossible to achieve for new members --all of which makes pyramid schemes such as Young Living inherently fraudulent. (*See id.* ¶ 48.)

Defendants' specific intent to defraud is also adequately alleged. Young, Turner and other members of the RICO conspiracy are alleged to have agreed to use false and fraudulent pretenses to deceive Plaintiff and class members, through materially misleading statements of fact and non-disclosure of important facts about Young Living. (*See id.* ¶¶ 51(a), 62(a), 73.)

4.       The RICO Conspiracy Allegations, Count Two, Are Adequately Alleged.

Defendants argue that Plaintiff failed to adequately plead that the individual Defendants formed an agreement to commit predicate acts.[9] Defendants again ignore binding Supreme Court authority. In *Salinas*, the Court held that a section 1962(d) claim requires only that the plaintiff allege the defendant *agreed* to the overall goal of the conspiracy. *Salinas v. United States*, 522 U.S. 52, 61–66 (1997). The Court further held "[a] person ... may be liable for [RICO] conspiracy even though he was incapable of committing the substantive offense." *Id.* at 63–64; *see also CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1088 (10th Cir. 2014) (citing *United States v. Randall*, 661 F.3d 1291, 1297 (10th Cir. 2011) (in civil RICO cases, a conspirator becomes liable under RICO conspiracy when the "conspirator adopts the goal of furthering the RICO enterprise, even if the conspirator does not commit a predicate act.")). Accordingly, there is no

---

[9] Defendants again argue that the RICO conspiracy claim does not identify which enterprise is being referred to, and thus does not comport with Rule 9(b). As explained above, Rule 9(b) does not apply to allegations of conspiracy. Moreover, the Amended Complaint specifically alleges a conspiracy relating to Count One, and the two alternative enterprises alleged therein, thereby narrowing the claim to those two alternative enterprises alleged in Count One. (*See* Doc. No. 59 ¶ 125.)

requirement that Plaintiff plead that all Defendants have agreed to the commission of predicate acts.  Agreeing to the goal of the conspiracy, as alleged here, is sufficient.

## IV.  CONCLUSION

Plaintiff's Young Living Essential Rewards Membership is not a security, and the PSLRA's RICO bar does not apply, based on the Amended Complaint; and cannot apply without a requisite fact-intensive analysis.  This Circuit has never declared all pyramid schemes are *per se* securities.  Rather, it has explicitly stated that each case must be analyzed on its own facts.  Here, the facts as pleaded in the Amended Complaint adequately demonstrate Young Living Essential Rewards Members such as Plaintiff were the ones responsible for their own profits in their fruitless recruitment efforts.   Under the *Howey* test, that fact is fatal to Defendants' claim that this Membership is a security.

As to Defendants' scattershot attack on the adequacy of the RICO claims, each attack is set up and knocked down, one by one, at pages 9-24 above.  In sum, Plaintiff has adequately alleged all of the elements for civil RICO substantive violations under section 1962(c), and for a civil RICO conspiracy under section 1962(d).  Defendants simply do not meet the high bar for 12(b)(6) or 9(b) dismissal, and their motion should be denied in its entirety.

DATED this 14th day of August, 2020.

MCNEILL | VON MAACK

Jason A. McNeill
Christopher M. Von Maack
*Attorneys for Plaintiff Julie O'Shaughnessy*

**NIX PATTERSON, LLP**
3600 N Capital of Texas Highway
Suite B350
Austin, Texas 78746
(512) 328-5333 (telephone)
Austin Tighe
atighe@nixlaw.com


**DUGGINS WREN MANN & ROMERO, LLP**
600 Congress Avenue, Ste. 1900
P. O. Box 1149
Austin, Texas 78767-1149
(512) 744-9300 (telephone)
Robert E. Linkin
rlinkin@dwmrlaw.com


**DuBOIS, BRYANT & CAMPBELL, LLP**
303 Colorado Street, Suite 2300
Austin, TX  78701
(512) 457-8000 (telephone)
J. David Rowe
drowe@dbcllp.com