Robert S. Clark (Utah Bar No. 4015)
Jeffrey J. Hunt (Utah Bar No. 5855)
David C. Reymann (Utah Bar No. 8495)
Bryan S. Johansen (Utah Bar No. 9912)
**PARR BROWN GEE & LOVELESS**
101 S 200 E Ste 700
Salt Lake City, UT 84111
Phone:  801-532-7840
Fax:  801-532-7750
rclark@parrbrown.com
jhunt@parrbrown.com
dreymann@parrbrown.com
bjohansen@parrbrown.com

Jeremy A. Fielding (*pro hac vice*)
Olivia Adendorff (*pro hac vice*)
Rachael A. Rezabek (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
1601 Elm Street
Dallas, Texas 75201
Phone:  214-972-1770
Fax:  214-972-1771
jeremy.fielding@kirkland.com
olivia.adendorff@kirkland.com
rachael.rezabek@kirkland.com

[Additional counsel on signature page]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **JULIE O'SHAUGHNESSY, individually, and on behalf of a class of similarly situated individuals,**<br><br>**Plaintiff,**<br><br>v.<br><br>**YOUNG LIVING ESSENTIAL OILS, LLC D/B/A YOUNG LIVING ESSENTIAL OILS,**<br><br>**Defendant.** | **DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT AND STRIKE PORTIONS OF THE SECOND AMENDED CLASS ACTION COMPLAINT THAT VIOLATE THE COURT'S JUNE 24, 2021 ORDER**<br><br>**Case No. 2:20-cv-00470-HCN-DBP**<br><br>**District Judge Howard C. Nielson, Jr.**<br><br>**Magistrate Judge Dustin B. Pead** |

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STATEMENT OF RELEVANT FACTS ........................................................................... 3

PROCEDURAL HISTORY ................................................................................................ 4

ARGUMENT ...................................................................................................................... 5

I.   PLAINTIFF'S SECURITIES CLAIMS SHOULD BE DISMISSED BECAUSE
     THEY ARE TIME-BARRED BY THE APPLICABLE STATUTES OF
     REPOSE ....................................................................................................................... 5

     A.  Plaintiff's Section 12(a)(2) Claim Is Time-Barred. ......................................... 5

     B.  Plaintiff's Section 10(b) and Rule 10b-5 Claim Is Time-Barred. .................... 7

II.  PLAINTIFF FAILS TO STATE A SECTION 10(B) CLAIM BECAUSE SHE
     FAILS TO PLEAD THAT SHE RELIED ON THE ALLEGED SCHEME ................... 8

III. PLAINTIFF FAILS TO STATE A SECTION 12(a)(2) CLAIM. ................................. 11

     A.  Young Living Was Not Required to Accuse Itself of Wrongdoing ............................ 12

     B.  Young Living Adequately Disclosed Income Data. ...................................... 14

IV.  THE PORTION OF PLAINTIFF'S COMPLAINT THAT EXPANDS THE
     CLASS DEFINITION BREACHES THE COURT'S JUNE 24, 2021 ORDER
     AND SHOULD BE STRICKEN. .................................................................................. 16

CONCLUSION ................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Althaus v. Broderick*,
  2016 WL 3976639 (D. Utah July 22, 2016) (unpublished) .................................................7, 8

*Amoco Production Co. v. Newton Sheep Co.*,
  85 F.3d 1464 (10th Cir. 1996) ........................................................................................5

*Arco Capital Corp. Ltd. v. Deutsche Bank AG*,
  986 F. Supp. 2d 296 (S.D.N.Y. 2013)..............................................................................7

*Arnold v. KPMG LLP*,
  334 F. App'x 349 (2d Cir. 2009) .....................................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................................11

*Ballan v. Wilfred Am. Educ. Corp.*,
  720 F. Supp. 241 (E.D.N.Y. 1989) .............................................................................13, 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................................11

*CalPERS v. ANZ Sec., Inc.*,
  137 S. Ct. 2042 (2017)...................................................................................................5, 6

*In re Citigroup, Inc. Sec. Litig.*,
  330 F. Supp. 2d 367 (S.D.N.Y. 2004)...............................................................................13

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014)....................................................................................11, 13, 14

*In re Countrywide Financial Corp. Mortgage-Backed Sec. Litig.*,
  966 F. Supp. 2d 1018 (C.D. Cal. 2013) .............................................................................5

*CTS Corp. v. Waldburger*,
  573 U.S. 1 (2014)...........................................................................................................5

*In re DVI, Inc. Sec. Litig.*,
  919 F. Supp. 2d 498 (E.D. Pa. 2013) ...............................................................................10

*Fed. Deposit Ins. Corp. for Colonial Bank v. First Horizon Asset Sec. Inc.*,
  291 F. Supp. 3d 364 (S.D.N.Y. 2018)................................................................................6, 7

*Fulghum v. Embarq Corp.*,
   785 F.3d 395 (10th Cir. 2015) ................................................................5

*GAF Corp. v. Heyman*,
   724 F.2d 727 (2d Cir. 1983)................................................................13

*Hawaii Ironworkers Annuity Tr. Fund v. Cole*,
   296 F.R.D. 549 (N.D. Ohio 2013) ................................................................10

*Hogan v. Pilgrim's Pride Corp.*,
   2021 WL 1534602 (D. Colo. Apr. 16, 2021) (unpublished)....................................6

*Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*,
   2021 WL 1222290 (D. Utah Mar. 31, 2021) .............................................11, 14, 15

*John Hancock Life Ins. Co. (U.S.A.) v. JP Morgan Chase & Co.*,
   938 F. Supp. 2d 440 (S.D.N.Y. 2013)................................................................6

*In re Longtop Fin. Techs. Ltd. Secs. Litig.*,
   939 F. Supp. 2d 360 (S.D.N.Y. 2013)................................................................6

*Merck & Co., Inc. v. Reynolds*,
   559 U.S. 633 (2010)................................................................7

*In re Morgan Stanley Info. Fund Sec. Litig.*,
   592 F.3d 347 (2d Cir. 2010)................................................................13

*In re Nature's Sunshine Prod. Sec. Litig.*,
   2008 WL 4442150 (D. Utah Sept. 23, 2008) (unpublished)............................8, 9, 10

*Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP*,
   603 F.3d 144 (2d Cir. 2010)................................................................9

*Padilla v. Winger*,
   2012 WL 1379228 (D. Utah Apr. 20, 2012) (unpublished)....................................7

*In re Refco, Inc. Sec. Litig.*,
   609 F. Supp. 2d 304 (S.D.N.Y. 2009)................................................................10

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)................................................................11

*Rubke v. Capitol Bancorp Ltd*,
   551 F.3d 1156 (9th Cir. 2009) ................................................................11

*Schwartz v. Celestial Seasonings, Inc.*,
   124 F.3d 1246 (10th Cir. 1997) ................................................................11

*Sec. Sys. v. Alder Holdings, LLC*,
    421 F. Supp. 3d 1186 (D. Utah 2019)....................................................................11

*Siegmund v. Xuelian Bian*,
    2018 WL 1611197 (S.D. Fla. Apr. 2, 2018) (unpublished)......................................9

*In re Smith Barney Transfer Agent Litig.*,
    884 F. Supp. 2d 152 (S.D.N.Y. 2012)....................................................................9

*Smith v. Lifevantage Corp.*,
    2020 WL 6940735 (D. Utah Nov. 25, 2020) (unpublished)................................5, 14

*Smith v. LifeVantage Corp.*,
    429 F. Supp. 3d 1275 (D. Utah 2019)....................................................................14

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
    802 F. Supp. 2d 1125 (C.D. Cal. 2011) ...................................................................7

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
    552 U.S. 148 (2008)..................................................................................2, 8, 9

*U.S. v. Matthews*,
    787 F.2d 38 (2d Cir. 1986)..............................................................................13, 14

**Statutes**

17 C.F.R. § 240.10b–5 ................................................................................ *passim*

15 U.S.C. § 77l(a)(2) ................................................................................. *passim*

15 U.S.C. § 77m ............................................................................................1, 5

15 U.S.C. § 78j(b) ..................................................................................... *passim*

28 U.S.C. § 1658(b)(2) ....................................................................................1, 7

**Rules**

Rule 8(a).......................................................................................................11

Rule 9(b) ..............................................................................................2, 11, 12

Pursuant to Federal Rules of Civil Procedure 12(b) and 9(b), Defendant Young Living Essential Oils, LLC ("Young Living") moves to dismiss Plaintiff Julie O'Shaughnessy's Second Amended Class Action Complaint (Dkt. No. 146) (the "Complaint").

## INTRODUCTION

This is Plaintiff's third try at fashioning a claim against Young Living based on the unfounded accusation that Young Living was operating a pyramid scheme prior to 2018. Plaintiff filed RICO claims on April 12, 2019 alleging that Young Living's membership program and compensation system constituted racketeering activity under the RICO Act. On June 24, 2021, the Court dismissed Plaintiff's RICO claims because they were preempted by the Private Securities Litigation Reform Act (PSLRA) and informed Plaintiff that her lawsuit could only survive if she could plead a viable securities claim. However, Plaintiff has spent the last two years insisting that this lawsuit *is not* a securities action. (*See, e.g.*, Dkt. No. 113 at 6 ("[A]ny reasonable interpretation of the allegations . . . make clear that a Young Living Essential Rewards Membership is not a security.").) Not surprisingly, therefore, she overlooked the strict legal requirements that every securities plaintiff must satisfy. Plaintiff's securities claims should be dismissed.

*First*, Plaintiff's securities claims are time-barred under the relevant statutes of repose. Plaintiff filed the Complaint on March 26, 2021 and pleaded two securities claims: (i) a claim under Section 12(a)(2) of the Securities Act of 1933; and (ii) a claim under Section 10(b) of the Exchange Act of 1934. It is apparent from the allegations in the Complaint that Plaintiff acquired the Membership—the security at issue—in 2015, *more than six years* before Plaintiff filed the Complaint. (Compl. ¶¶ 10, 50, 77.) But under the applicable statutes of repose, and counting from the 2015 purchase date, Plaintiff had only three years to file her Securities Act claim and five years to file her Exchange Act claims. 15 U.S.C. § 77m; 28 U.S.C. § 1658(b)(2). Plaintiff did not file her claims timely. And, under settled law, there is no room for tolling, relation back, or other

equitable exceptions.  Thus, because Plaintiff has failed to plead her securities claims in a timely manner, the entire Complaint should be dismissed on this ground alone.

*Second*, Plaintiff's Section 10(b) and Rule 10b-5 claim fails as a matter of law because Plaintiff fails to plead reliance.  Plaintiff has alleged a "scheme liability" theory under SEC Rules 10b-5(a) and (c).  Unlike misrepresentation claims under Rule 10b-5(b), plaintiffs that allege a "scheme liability" claim are not entitled to a presumption of reliance and are required to plead it in their complaint.  Not only has Plaintiff failed to plead reliance, she has *disclaimed* it, instead asserting that "reliance is not a requirement to scheme liability."  (Compl. ¶ 85.)  But that is not the law.  *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 159 (2008) ("Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action.").  Plaintiff's Exchange Act claim (Count I) should be dismissed.

*Third*, Plaintiff's Section 12(a)(2) claim fails as a matter of law under the heightened pleading requirements of Rule 9(b).  As an initial matter, Young Living was not required to accuse itself of wrongdoing.  Plaintiff has asked this Court to hold Young Living liable for failing to disclose that it "was operating a pyramid scheme."  (Compl. ¶ 92(a).)  And Plaintiff admits that operating a pyramid scheme is illegal.  (*Id*. ¶ 19.)  But the law does not require Young Living to accuse itself of illegal conduct by calling its legitimate business a pyramid scheme; Young Living was not required to engage in such self-flagellation.  Lastly, Young Living cannot be held liable for failing to disclose income data because it made all required income disclosures to Plaintiff. Thus, Plaintiff's Securities Act claim (Count II) should be dismissed on either of these independent grounds.

*Separately*, Young Living respectfully requests that the Court strike the portions of the Complaint that violate the Court's June 24, 2021 order.  That day, the Court heard argument on

Plaintiff's motion for leave to file an amended complaint.  The Court dismissed Plaintiff's RICO claims and directed the Plaintiff to "delete" the RICO counts and "any allegations relevant only to [those] Counts . . . *without further changes to the [remaining] allegations*."  (Dkt. No. 145 (emphasis added).)  Plaintiff ignored the Court's clear directive and is now asserting far more expansive securities claims.  The Court should strike the portions of the Complaint that flout its June 24, 2021 order.

## STATEMENT OF RELEVANT FACTS

Direct selling companies are legitimate businesses that offer individuals an opportunity to buy products at wholesale prices and sell them at a retail markup.  Young Living is a direct selling company that sells essential oils, supplements, and other lifestyle products.  (*See* Compl. ¶ 17.)[1] It also features a membership program that allows individuals to join Young Living as distributors and potentially profit from the sale of Young Living's selection of products.  (*Id*. ¶ 10.)  In 2015, a close friend of Plaintiff, who was herself a Young Living distributor, hosted a party designed to market her distributorship business.  (*Id*. ¶ 50.)  Plaintiff attended this marketing event and was initially interested in the essential oils starter kit her friend was selling, but was discouraged by the $100 price tag.  (*Id.*)  However, Plaintiff's friend persuaded her to become a distributor because it "might at least cover the cost of paying" for the essential oils.  (*Id.*)  Plaintiff presumably agreed and joined Young Living as a distributor.  (*Id.*)  Plaintiff electronically signed a Member Agreement, which incorporated the Young Living Policies and Procedures and the Compensation Plan.  (*Id.* ¶ 51.)  Plaintiff claims that Young Living "deceptively induced" her to become a Young Living member by promising financial rewards.  (*Id.* ¶¶ 2, 59.)

---

[1]   Young Living accepts the allegations in the Complaint that are not contradicted by the exhibits incorporated by reference as true for the purposes of this Motion.

## PROCEDURAL HISTORY

On April 12, 2019, Plaintiff filed a mail fraud and wire fraud complaint under the RICO Act against Young Living and certain other defendants in the United States District Court for the Western District of Texas.  (Dkt. No. 1.)  The Texas court transferred this action to this Court on June 20, 2020.  (Dkt. No. 74.)  On March 26, 2021, Plaintiff filed a motion seeking leave to file an amended complaint.  (Dkt. No. 131.)  Plaintiff sought to plead Securities Act and Exchange Act claims in the alternative to her RICO claims.  (*Id.*)  Young Living opposed the motion to amend and argued that the proposed amended complaint should be denied on futility grounds. (Dkt. No. 138.)

In an order dated June 24, 2021, this Court dismissed Plaintiff's RICO claims but allowed Plaintiff an opportunity to assert certain securities claims in an amended complaint.  (Dkt. No. 145.)  The Court informed Plaintiff that, in amending her complaint, she should remove the allegations related to the RICO claims "without further changes to the [remaining] allegations." (*Id.*)  Plaintiff filed the Complaint on July 2, 2021 and asserted securities claims under the Securities Act and the Exchange Act.  (Dkt. No. 147.)  Contrary to the Court's order, Plaintiff made changes to the Complaint, including redefining the putative class, *see infra* Part IV. (*Compare* Proposed SAC ¶ 111 *with* Compl. ¶ 66.)  Young Living now moves to dismiss this new Complaint on the basis of entirely new arguments not raised in its opposition to Plaintiff's motion to amend.[2]

---

[2]   Young Living raised four arguments in its opposition to Plaintiff's motion to amend: (i) the motion was untimely filed; (ii) the amendment did not cure certain deficiencies with respect to the RICO claims; (iii) the amendment failed to plead an actionable misstatement with respect to the Securities Act claim; and (iv) the securities claims were time-barred by a statute of limitations (as opposed to the applicable statutes of repose, as argued herein).  (Dkt. No. 138.) Young Living does not raise any of the foregoing arguments in this Motion.

## ARGUMENT

**I.    PLAINTIFF'S SECURITIES CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE TIME-BARRED BY THE APPLICABLE STATUTES OF REPOSE.**

### A.  Plaintiff's Section 12(a)(2) Claim Is Time-Barred.

Plaintiff's Section 12(a)(2) claim should be dismissed because it was asserted against Young Living long after the three-year statute of repose had run.[3]  A statute of repose presents "an absolute time limit beyond which liability no longer exists," and cannot be "tolled for any reason because to do so would upset the economic balance struck by the legislative body."  *Amoco Production Co. v. Newton Sheep Co.*, 85 F.3d 1464, 1472 (10th Cir. 1996) ("[A repose period] is not subject to equitable tolling or equitable estoppel."); *see also Fulghum v. Embarq Corp.*, 785 F.3d 395, 415–16 (10th Cir. 2015) ("Statutes of repose are intended to demarcate a period of time within which a plaintiff must bring claims or else the defendant's liability is extinguished."); *see, e.g.*, *Smith v. Lifevantage Corp.*, 2020 WL 6940735, at *3 (D. Utah Nov. 25, 2020) (applying Section 13's three-year statute of repose and dismissing Securities Act claim) (unpublished).

Section 13 of the Securities Act imposes a strict three-year statute of repose—barring, without exception, any Section 12(a)(2) claim brought more than three years after the date of the sale of the security to the purchaser.  15 U.S.C. § 77m; *see also In re Countrywide Financial Corp. Mortgage-Backed Sec. Litig.*, 966 F. Supp. 2d 1018, 1021 (C.D. Cal. 2013) ("[T]he repose period for a Section 12(a)(2) claim begins to run on the date 'of the sale' to plaintiffs."); *John Hancock*

---

[3]    The Supreme Court has distinguished between statutes of repose and statutes of limitations.  *See CalPERS v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2055 (2017).  A "conventional statute of limitations" may be tolled in appropriate circumstances.  *Id.*  But a statute of repose can never be tolled because its very purpose is "to create an absolute bar on a defendant's temporal liability."  *Id.* at 2050.  Indeed, "[t]he purpose and effect of a statute of repose . . . is to override customary tolling rules arising from the equitable powers of courts."  *Id.* at 2051.  The Court previously considered a futility argument based on a statute of limitations, but it has not previously considered the argument that Plaintiff's claims are foreclosed by the "absolute bar" of the applicable statutes of repose, *see CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014).

*Life Ins. Co. (U.S.A.) v. JP Morgan Chase & Co.*, 938 F. Supp. 2d 440, 444 (S.D.N.Y. 2013) (same).  As the Supreme Court of the United States has held, "[n]o feature of § 13 provides that deviation from its time limit is permissible . . . To the contrary, the text, purpose, structure, and history of the statute all disclose the congressional purpose to offer defendants full and final security after three years." *CalPERS v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2052 (2017).  This applies equally to claims raised for the first time in an amended pleading—like the ones here—as it does to claims made in an initial pleading.  *See, e.g., Hogan v. Pilgrim's Pride Corp.*, 2021 WL 1534602, at *6 (D. Colo. Apr. 16, 2021) (holding that "plaintiff is not immune from the repose period merely because his initial filing of this case was timely") (unpublished); *Fed. Deposit Ins. Corp. for Colonial Bank v. First Horizon Asset Sec. Inc.*, 291 F. Supp. 3d 364, 372 (S.D.N.Y. 2018) (rejecting argument that Section 13's statute of repose "only bars commencing a new action" rather than claims "brought as an amendment to a complaint"); *In re Longtop Fin. Techs. Ltd. Secs. Litig.*, 939 F. Supp. 2d 360, 379–80 (S.D.N.Y. 2013) (amendment to a complaint filed after the expiration of the repose period, adding new claims, was time-barred).

Here, Plaintiff allegedly purchased her Young Living Essential Rewards Membership (the "Membership"), the security at issue, in 2015.[4]  (Compl. ¶ 10.)  Thus, the repose period for Plaintiff's Section 12(a)(2) claim began to accrue in 2015, on the date Plaintiff purchased the Membership.  Yet, Plaintiff waited *six years* before she asserted the Section 12(a)(2) claim for the first time on March 26, 2021, when she moved to file the Second Amended Complaint.  (*See* Dkt. No. 131.)  Plaintiff's Section 12(a)(2) claim is time-barred, and should be dismissed.  *E.g., First*

---

[4]   Plaintiff does not allege an exact date in 2015 on which she became a Young Living member; however, by May 2015, Plaintiff alleges that she was receiving Young Living products.  (*See, e.g.*, SAC ¶ 61.)  Therefore, Plaintiff appears to have purchased her membership between January and May 2015.  A complaint in early 2018 would have been timely.  But the Complaint in mid-2021 certainly was not.

*Horizon*, 291 F. Supp. 3d at 372 (S.D.N.Y. 2018) (dismissing Section 12(a)(2) claim asserted in amended complaint as time-barred by Section 13's statute of repose).

**B.  Plaintiff's Section 10(b) and Rule 10b-5 Claim Is Time-Barred.**

Plaintiff's Section 10(b) and Rule 10b-5 claim is likewise time-barred by the five-year statute of repose set forth in 28 U.S.C. § 1658(b)(2).  *See Althaus v. Broderick*, 2016 WL 3976639, at *2 (D. Utah July 22, 2016) (Section 1658(b)'s statute of repose governs the timeliness of Section 10(b) claims) (unpublished); *see also Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 650 (2010) (describing Section 1658(b)(2) as an "unqualified bar" that "giv[es] defendants total repose after five years").

Like Section 13, "the five-year limitations period found in section 1658(b)(2) is an absolute statute of repose" that "may not be tolled and begins to run on the date the plaintiff purchased the security." *Padilla v. Winger*, 2012 WL 1379228, at *3 (D. Utah Apr. 20, 2012) (unpublished); *see also Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1134 (C.D. Cal. 2011) ("An action under § 10(b) of the Exchange Act or Rule 10(b)(5) is subject to a five-year statute of repose [that] begins to run on the date that the plaintiff purchased the securities at issue."); *Arnold v. KPMG LLP*, 334 F. App'x 349, 351 (2d Cir. 2009) (statute of repose begins to run "on the date the parties have committed themselves to complete the purchase or sale transaction.").

Plaintiff argues that the Membership constitutes the sale of a security.  (*Id.* ¶ 77.)  And Plaintiff alleges that she purchased the Membership in 2015 (SAC ¶ 10), or *six years* before she first asserted her Section 10(b) and Rule 10b-5 claim on March 26, 2021.  As such, Plaintiff's claim is time-barred, and should be dismissed.  *See, e.g.*, *Arco Capital Corp. Ltd. v. Deutsche Bank AG*, 986 F. Supp. 2d 296, 302 (S.D.N.Y. 2013) (dismissing plaintiff's Rule 10b-5(a) and (c) claim

because the securities at issue were purchased "more than five years prior to the filing of the initial complaint"); *see also Althaus*, 2016 WL 3976639, at *4 (similar).

## II.      PLAINTIFF FAILS TO STATE A SECTION 10(B) CLAIM BECAUSE SHE FAILS TO PLEAD THAT SHE RELIED ON THE ALLEGED SCHEME.

Section 10(b) of the Exchange Act prohibits the employment of "any manipulative or deceptive device or contrivance in contravention of [SEC Rules]." 15 U.S.C. § 78j(b). Subsections (a) and (c) of Rule 10b-5 make it unlawful for any person to engage in "scheme liability"—defined as using "any device, scheme, or artifice to defraud" or engaging in "any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." 17 C.F.R. § 240.10b-5. To state a "scheme liability" claim, Plaintiff must plead with particularity, among other elements, a fraudulent scheme, reliance by the plaintiff on that scheme, and scienter. Indeed, reliance is "an essential element" for scheme liability. *Stoneridge*, 552 U.S. at 159. The Supreme Court has said that, in the scheme liability context, "reliance is tied to causation," and courts must consider whether the alleged fraudulent scheme was "immediate or remote to the [plaintiff's] injury." *Id.* at 160. This Court has held that, if the alleged-to-be deceptive conduct "was not publicly disclosed, there [can] be no reliance." *See In re Nature's Sunshine Prod. Sec. Litig.*, 2008 WL 4442150, at *4 (D. Utah Sept. 23, 2008) (unpublished). Plaintiff has failed to plead that she relied on the scheme. Thus, Plaintiff's Exchange Act claim should be dismissed.

According to Plaintiff, "individual reliance by Plaintiff and class members is not a requirement to scheme liability under Section 10(b)(5), subsections (a) and (c)." (Compl. ¶ 85.) This misstates the law. The Supreme Court has clearly explained that "[r]eliance by the plaintiff *upon the defendant's deceptive acts* is an essential element of the § 10(b) private cause of action." *Stoneridge*, 552 U.S. at 159. Plaintiff asserts, in the alternative, that Plaintiff is entitled to a presumption of reliance. (Compl. ¶ 85.) But the Supreme Court has soundly rejected the

presumption of reliance when a plaintiff relies on a scheme liability theory. *Stoneridge*, 552 U.S. at 159 (holding that the presumption of reliance does not apply and affirming dismissal of complaint because alleged reliance was "too remote for liability."). In the wake of *Stoneridge*, this Court has rejected scheme liability claims where reliance is lacking. *Nature's Sunshine*, 2008 WL 4442150 at *3.[5] Lastly, Plaintiff alleges that "generalized class-wide proof demonstrates reliance on Defendant Young Living's scheme to defraud such as to support the *inference* of reliance applicable to the entire Class." (Compl. ¶ 86.) In other words, Plaintiff asks this Court to *infer* that Plaintiff relied on the alleged scheme because she (i) signed a contract, (ii) that imposed terms, and (iii) contained omissions. (*Id.*) But these allegations fall short.

*First*, Plaintiff clearly states her motivations for purchasing her membership in the Complaint. In 2015, Plaintiff attended a private party hosted by a close friend. (*Id.* ¶ 50.) Plaintiff concedes that her friend, a Young Living distributor, hosted the party for her own private purposes and to advance her own private business. (*See id.*) At the party, Plaintiff was "initially interested" in purchasing the essential oils, but found the $100 price tag too expensive. (*Id.*) Then, according to Plaintiff, she was "persuaded" at the private party to join Young Living; and Plaintiff thought becoming a distributor "might at least cover the cost of paying approximately $100" for the oils that she wanted. (*Id.*) The Complaint concedes that Plaintiff "was persuaded" by an unidentified friend to join Young Living.

---

[5] And courts across the country consistently do the same. *See, e.g.*, *Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP*, 603 F.3d 144, 159 (2d Cir. 2010) (rejecting scheme liability where plaintiff failed to plead reliance); *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 162 (S.D.N.Y. 2012) (same); *Siegmund v. Xuelian Bian*, 2018 WL 1611197, at *9 (S.D. Fla. Apr. 2, 2018) (unpublished) (plaintiff did not "carr[y] his heavy burden in showing that [he] in fact relied upon [defendant's] own deceptive conduct").

*Second*, after being persuaded to join Young Living by her close friend at a private party, Plaintiff claims that she was provided and signed the Member Agreement, the Policies and Procedures, and the Compensation Plan (together, the "Prospectus"). (*Id.* ¶ 51.) Additionally, Plaintiff concedes that the income disclosure statements were made available to her on Young Living's website. (*Id.* ¶ 57.) As stated below, *infra* Part III(B), the disclosure statements explain the low likelihood that Plaintiff would meet her stated goal of "breaking even." *See* Ex. A, 2015 Income Disclosures at 1; *see also* Ex. B, 2016 Income Disclosures at 1. Yet, even after signing and reviewing the materials that clearly contradicted her goals, Plaintiff continued to pay her monthly membership fees in hopes of "breaking even." (Compl. ¶ 53.) Plaintiff ignored Young Living's public disclosures; she certainly did not rely on them.

*Third*, because the alleged scheme was not publicly disclosed, there can be no reliance. *See, e.g.*, *Nature's Sunshine*, 2008 WL 4442150 at \*4 ("[Because] conduct was not publicly disclosed, there could be no reliance."). This is intuitive because "[a]bsent disclosure of [the deceptive] conduct to the public, there is no basis [to] conclude" that a plaintiff "relied on that conduct when buying or selling the security." *Hawaii Ironworkers Annuity Tr. Fund v. Cole*, 296 F.R.D. 549, 555 (N.D. Ohio 2013). Courts therefore routinely dismiss scheme liability claims for failure to plead reliance where the alleged scheme was not publicly disclosed.[6] Here, it is undisputed that the alleged pyramid scheme was not publicly disclosed. Indeed, the gravamen of Plaintiff's securities fraud claim is that Young Living *failed to disclose* that it "was operating a

---

[6]     *In re DVI, Inc. Sec. Litig.*, 919 F. Supp. 2d 498, 507–08 (E.D. Pa. 2013) ("The record does not establish that the Plaintiff investors knew about or otherwise relied on any conduct . . . The record shows the opposite—that none of the alleged conduct was publicly disclosed."); *In re Refco, Inc. Sec. Litig.*, 609 F. Supp. 2d 304, 317–18 (S.D.N.Y. 2009) (cannot show reliance when acts not communicated to public).

pyramid scheme." (Compl. ¶ 92(a).) Plaintiff concedes that the pyramid scheme was not disclosed to the public; therefore, it is impossible for her to have relied on it.

## III.   PLAINTIFF FAILS TO STATE A SECTION 12(a)(2) CLAIM.

To state a claim under Section 12(a)(2) of the Securities Act, Plaintiff must plead facts sufficient to show that (i) the prospectus included "an untrue statement of a material fact or omit[ted] to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading"; and (ii) Young Living was required to disclose the alleged misstatement or omission. *See* 15 U.S.C. § 77*l*(a)(2); *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014). Typically, Section 12(a)(2) claims sound in negligence and must satisfy Rule 8(a), which requires that a complaint state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under Rule 8(a), claims based on "bare," "conclusory," or "speculative" allegations must be dismissed, and plaintiffs must allege facts that are at least "suggestive" of their claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007).

But where, as here, a plaintiff alleges a theory of fraud (i.e., a pyramid scheme) and alleges that the defendant "knew" of the fraud; the complaint must meet the heightened pleading requirements of Rule 9(b). *Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*, 2021 WL 1222290, at *5 (D. Utah Mar. 31, 2021) (citing *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997)). If a complaint, as here, "employs the exact same factual allegations to allege violations of [the Securities Act] as it uses to allege fraudulent conduct under section 10(b) of the Exchange Act, [the Court] can assume that it sounds in fraud." *Indiana Pub. Ret. Sys.*, 2021 WL 1222290 at *5 (quoting *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1161 (9th Cir. 2009); *see also Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (applying Rule 9(b) to Securities Act claims "premised on allegations of fraud"); *Sec. Sys. v. Alder Holdings, LLC*, 421 F. Supp. 3d 1186, 1194–96 (D.

Utah 2019) (applying Rule 9(b) to claims "based on the same core allegations of deception, false misrepresentations, and fraudulent conduct.")).  Rule 9(b) provides that when pleading fraud, a plaintiff must "state with particularity the circumstances constituting fraud or mistake." *See* Fed. R. Civ. P. 9(b).

Plaintiff claims that Young Living omitted two material statements in the Prospectus. (Compl. ¶¶ 10, 92.)  *First*, Plaintiff alleges that nothing in the Prospectus "disclosed that Defendant was operating a pyramid scheme."  (*Id.* ¶ 92(a).)  *Second*, Plaintiff alleges that nothing in the Prospectus or on Young Living's website "disclosed that the majority of participants . . . would lose money unless they operated their business opportunity in the pyramid scheme as [a pyramid scheme]."  (*Id.* ¶ 92(b).)  Plaintiff has failed sufficiently to plead the third element of Section 12(a)(2)—that is, Plaintiff has not alleged any actionable false or misleading misstatement or omission—because (i) Young Living did not have a duty to characterize its legitimate business as a pyramid scheme; and (ii) Young Living, in fact, made all required disclosures to Plaintiff.  The Court should dismiss Plaintiff's Section 12(a)(2) claim for either of the foregoing reasons.

### A.  Young Living Was Not Required to Accuse Itself of Wrongdoing.

Plaintiff claims that Young Living failed to disclose that (i) its compensation structure was a pyramid scheme and (ii) its distributors would lose money unless they operated within the pyramid scheme.  Both alleged omissions home in on Plaintiff's allegation that Young Living's core business is illegal.  But Plaintiff fails to plead that Young Living was required to accuse itself of running an illegal pyramid scheme.

 "Disclosure is not a rite of confession." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 365 (2d Cir. 2010).  Young Living does not have an obligation to disclose that it "may have engaged in activities that might later be determined to run afoul of the securities laws."  *Id.* Indeed, courts have repeatedly held that companies do not have a duty "to disclose uncharged,

unadjudicated wrongdoing." *UBS AG*, 752 F.3d at 184 (dismissing Section 12(a)(2) claim because defendant was not required to accuse itself of participating in a tax evasion scheme); *see In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004) (no duty to accuse self and disclose that revenue was derived from "illegitimate sources"); *U.S. v. Matthews*, 787 F.2d 38, 49 (2d Cir. 1986) (no duty to confess guilt to uncharged crimes); *GAF Corp. v. Heyman,* 724 F.2d 727, 740 (2d Cir. 1983) (no requirement for management "to accuse itself of antisocial or illegal policies."); *Ballan v. Wilfred Am. Educ. Corp.*, 720 F. Supp. 241, 249 (E.D.N.Y. 1989) (characterizing as "silly" and "unworkable" to interpret securities laws to require companies "to direct conclusory accusations at itself or to characterize its behavior in a pejorative manner.").

Here, Plaintiff claims that Young Living violated the federal securities laws because it failed to disclose that Young Living "was operating a pyramid scheme." (Compl. ¶ 92(a).) The Complaint points to several conclusory allegations that purport to suggest that Young Living was operating such a scheme. (Compl. ¶¶ 2–5, 14, 17–19, 27, 34–35, 39–42, 45–50, 57, 61–62, 64, 68, 70, 73, 78, 80–84, 86–87.) But Plaintiff never alleges that a court or administrative agency has ever adjudged Young Living's compensation system a pyramid scheme. Nor does Plaintiff allege any newly discovered "smoking gun" allegation that suggests that Young Living was operating a pyramid scheme at all.[7]

Plaintiff concedes that operating a pyramid scheme is illegal. (Compl. ¶¶ 2–3, 18–19, 27, 30, 33–34, 38, 40–42, 46–47, 48–49, 61, 63–64, 80, 87.)  And Plaintiff also concedes that it expected Young Living to disclose that it was engaging in this unproven illegal conduct. (Compl.

---

[7]   This case is distinguishable from *LifeVantage* because that case turned on "smoking gun" allegations.  For instance, the plaintiff pleaded that the defendants hired paid actors to lie about their success.  *Smith v. LifeVantage Corp.*, 429 F. Supp. 3d 1275, 1284 (D. Utah 2019).  The plaintiff also accused the company of lying about their patents.  *Id.*

¶ 92(a).)  Yet, remarkably, Plaintiff asks this Court to require companies to, at worst, confess guilt to uncharged crimes; or, at best, characterize legitimate business behavior pejoratively.  (*See* Compl. ¶ 92.)  This is "silly" and "unworkable," and courts have rejected such a disclosure requirement.  *E.g.*, *Matthews*, 787 F.2d at 49; and *Ballan*, 720 F. Supp. at 249.  Young Living had no obligation to disclose that its legitimate compensation system was illegal.  *UBS AG*, 752 F.3d at 184.

### B.  Young Living Adequately Disclosed Income Data.

Plaintiff claims that Young Living's failure to disclose average losses is a material omission because it misrepresents how likely a member is to profit.  (Compl. ¶¶ 6, 92(b).)  While Plaintiff concedes that Young Living made income disclosures, Plaintiff alleges that those disclosure were not complete.  (*Id.* ¶¶ 6, 33.)  "To require that statements be 'complete' would be to impose an excessive burden since no matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not."  *Indiana Pub. Ret. Sys.*, 2021 WL 1222290 at *7.  Plaintiff's claim related to Young Living's income disclosures fails because Young Living disclosed information sufficient for an individual member to calculate expected losses.  Young Living was not required to disclose more than it did.

The Complaint alleges that Young Living "affirmatively concealed" the "key fact" that, in 2016, "the average *loss* per member . . . was approximately $1,175."  (Compl. ¶ 6.)  But Young Living did not "affirmatively conceal" anything.  Plaintiff does not divulge that her source for the $1,175 figure is *Young Living's 2016 Income Disclosure Statement*.[8]  Young Living disclosed the

---

[8]   The 2016 statement explains that "[t]he average annual income for all members in this time was $25."  Ex. B at 1.  Plaintiff multiplied the monthly "expense" of the commission-side membership ($100 a month) by 12 to arrive at a yearly expense of $1,200.  Plaintiff then subtracted $25, the "average annual income for all members," from that amount to arrive at $1,175—what Plaintiff alleges is the "average loss per member."  (Compl. ¶ 6.)

very thing Plaintiff claims was omitted from the income disclosures. Yet, Plaintiff's gripe remains that Young Living's income statements were not complete enough. Plaintiff expected Young Living to disclose the $1,175 figure regardless of Young Living's views on the reliability of the figure. (Compl. ¶ 6.) But this is the exact type of "complete" disclosure that this Court has refused to require. *See Indiana Pub. Ret. Sys.*, 2021 WL 1222290 at *7 ("To construe this full and complete disclosure requirement so broadly as to require an actor to disclose any and all material information when the actor so much as vaguely or generally references subject matter related to the material information would impose an impossible burden.").

What Young Living did provide was transparent and reliable income data. In 2015, the year Plaintiff joined, Young Living disclosed that 97.5% of its members made $79 or less a month *before* monthly dues and other expenses. Ex. A at 1. The income disclosures do not provide average net earnings (i.e., Net Earnings = Gross Income - Total Expenses) because, as Young Living expressly disclosed, expenses incurred by a member "can vary widely." *Id.* Both the 2015 and 2016 disclosures explain that expenses might include "advertising or promotional expenses, product samples, training, rent, travel, telephone and Internet costs, and miscellaneous expenses." *Id.*; Ex. B at 1. Then, after disclosing how low average annual revenues were, the disclosures went one step further, making clear that even those reported income figures "should not be considered as guarantees or projections of [] actual earnings or profits." *Id.* The income disclosures provided Plaintiff with all of the information she needed to understand her potential losses.

Finally, although Plaintiff claims that the Prospectus was misleading, she makes this allegation based only on hindsight. In fact, Plaintiff seemingly ignored all of Young Living's income disclosures when she became a member. *By her own admission*, Plaintiff joined Young Living because she was hoping to "cover the cost of paying approximately $100 for a 'starter kit.'"

(Compl. ¶ 50.)  Plaintiff had a goal of "breaking even" each month and continued to purchase $100 worth of oils each month.  (*Id.* ¶ 53.)  But the 2015 Income Disclosure Statement was available to Plaintiff before she purchased the Membership, and it explained that "the average annual income for all members . . . was $30" *before* expenses.  Ex. A at 1.  Young Living emphasized that a member's success depended on "individual diligence, work, effort, sales skill, and market conditions."  *Id.*  Young Living made adequate income disclosures to Plaintiff, but she ignored them.

## IV.   THE PORTION OF PLAINTIFF'S COMPLAINT THAT EXPANDS THE CLASS DEFINITION BREACHES THE COURT'S JUNE 24, 2021 ORDER AND SHOULD BE STRICKEN.

The Court heard argument on Plaintiff's motion seeking leave to file an amended complaint on June 24, 2021.  (Dkt. No. 144.)  At the end of the argument, the Court dismissed Plaintiff's RICO claims, and ordered Plaintiff to file her proposed amendment without the dismissed RICO claims.  (Dkt. No. 145.)  The Court specifically instructed Plaintiff to "delete" the RICO counts and "any allegations relevant only to [those] Counts . . . without further changes to the [remaining] allegations."  (*Id.*)  Notwithstanding the Court's clear instructions, Plaintiff altered the class definition in the complaint she ultimately filed.  In her motion to amend, Plaintiff proposed an amended complaint seeking to state claims on behalf of the following narrow class of investors:

> All United States residents who joined Young Living **prior to December 31, 2016** and enrolled as Essential Rewards members.

(Proposed SAC ¶ 111 (emphasis added).)  This is the class definition that the Court considered when it partially granted Plaintiff's motion for leave to file an amended complaint.  And it is the class definition in a complaint that the Court told Plaintiff it could not change.  (*See* Dkt. No. 145.)

But Plaintiff did not file a complaint with that class definition.  Instead, the complaint that Plaintiff ultimately filed contains a far more expansive class definition, shown here with changes tracked:

> All United States residents who joined Young Living ~~prior to December 31, 2016 and enrolled~~ as Essential Rewards members.

By removing the "December 31, 2016" temporal limiter, Plaintiff improperly expanded the putative class to include *anyone* who joined Young Living and enrolled as a member at *any time*. (Compl. ¶ 66.)  Plaintiff's decision to change the class definition has serious implications on the scope of the claims sought to be brought against Young Living.  And the Court did not permit Plaintiff to bring such expansive securities claims.  (*See* Dkt. No. 145.)  Accordingly, this Court should strike Plaintiff's expanded class definition.

## <u>CONCLUSION</u>

Allegations of securities law violations can have a taxing impact on a company.  As such, there are strict timeliness and pleading requirements designed to prevent such suits from proceeding where plaintiffs, as in this case, do not timely assert their claims and are unable to state any adequate basis for liability.  Plaintiff's Complaint should be dismissed in full and with prejudice, or in the alternative, the Court should strike her expanded class definition.

DATED:  August 2, 2021                          Respectfully submitted,

                                        By:      */s/ Jeremey A. Fielding*

                                                 Robert S. Clark
                                                 Jeffrey J. Hunt
                                                 David C. Reymann
                                                 Bryan S. Johansen
                                                 **PARR BROWN GEE & LOVELESS**
                                                 101 S 200 E Ste 700
                                                 Salt Lake City, UT 84111
                                                 Phone:  801-532-7840
                                                 Fax:  801-532-7750
                                                 rclark@parrbrown.com
                                                 jhunt@parrbrown.com
                                                 dreymann@parrbrown.com
                                                 bjohansen@parrbrown.com

                                                 Jeremy A. Fielding (*pro hac vice*)
                                                 Olivia Adendorff (*pro hac vice*)
                                                 Rachael A. Rezabek (*pro hac vice*)
                                                 **KIRKLAND & ELLIS LLP**
                                                 1601 Elm Street
                                                 Dallas, Texas 75201
                                                 Phone:  214-972-1770
                                                 Fax:  214-972-1771
                                                 jeremy.fielding@kirkland.com
                                                 olivia.adendorff@kirkland.com
                                                 rachael.rezabek@kirkland.com

                                                 Stefan H. Atkinson (*pro hac vice*
                                                 forthcoming)
                                                 **KIRKLAND & ELLIS LLP**
                                                 601 Lexington Avenue
                                                 New York, New York 10022
                                                 Phone:  212-446-4803
                                                 Fax:  212-446-4900
                                                 stefan.atkinson@kirkland.com

                                                 *Counsel for Young Living Essential Oils, LC*

18

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has

been served on counsel of record via the Court's ECF/CM filing system.


/s/ Jeremy A. Fielding