Robert S. Clark (Utah Bar No. 4015)
Jeffrey J. Hunt (Utah Bar No. 5855)
David C. Reymann (Utah Bar No. 8495)
Bryan S. Johansen (Utah Bar No. 9912)
**PARR BROWN GEE & LOVELESS**
101 S 200 E Ste 700
Salt Lake City, UT 84111
Phone: 801-532-7840
Fax: 801-532-7750
rclark@parrbrown.com
jhunt@parrbrown.com
dreymann@parrbrown.com
bjohansen@parrbrown.com

Jeremy A. Fielding (*pro hac vice*)
Jon David Kelley (*pro hac vice*)
Rachael A. Rezabek (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
4550 Travis Street
Dallas, TX 75205
Phone: 214-972-1770
Fax: 214-972-1771
jeremy.fielding@kirkland.com
jon.kelley@kirkland.com
rachael.rezabek@kirkland.com

Jess M. Krannich (Utah Bar No. 14398)
**KIRKLAND & ELLIS LLP**
95 South State Street
Salt Lake City, UT 84111
Phone: 801-877-8100
Fax: 801-877-8101
jess.krannich@kirkland.com

[Additional counsel on signature page]

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JULIE O'SHAUGHNESSY, individually, and on behalf of a class of similarly situated individuals,<br><br>　　　　　Plaintiff,<br>　v.<br><br>YOUNG LIVING ESSENTIAL OILS, LC D/B/A YOUNG LIVING ESSENTIAL OILS,<br><br>　　　　　Defendant. | **DEFENDANT YOUNG LIVING ESSENTIAL OILS, LC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S CLASS CLAIMS**<br><br>Case No. 2:20-cv-00470-HCN-CMR<br><br>District Judge Howard C. Nelson<br><br>Magistrate Judge Cecilia M. Romero |

## **<u>TABLE OF CONTENTS</u>**

**Page**

I.   INTRODUCTION AND PRECISE RELIEF SOUGHT ............................................................. 1

II.   FACTUAL BACKGROUND .................................................................................................. 2

III.   STATEMENT OF UNDISPUTED MATERIAL FACTS ...................................................... 6

IV.   LEGAL STANDARD ............................................................................................................ 9

V.   ARGUMENT ........................................................................................................................ 10

A.   No Genuine Dispute of Material Fact Exists that Ms. O'Shaughnessy Accepted the 2018 P&Ps ..... 11

B.   Ms. O'Shaughnessy's Acceptance of the 2018 P&Ps is Established as the Law of the Case. .......... 14

C.   The Class Action Waiver is Binding and Enforceable .......................................................... 15

VI.   CONCLUSION ..................................................................................................................... 18

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ........................................................................................... 15, 16, 17

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................... 9

*Annett v. Univ. of Kansas*,
371 F.3d 1233 (10th Cir. 2004) ........................................................................ 9

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ........................................................................................... 15

*Bassett v. Elec. Arts Inc.*,
2015 WL 1298644 (E.D.N.Y., 2015) .............................................................. 12

*Califano v. Yamasaki*,
442 U.S. 682 (1979) ........................................................................................... 17

*Capps v. Sullivan*,
13 F.3d 350 (10th Cir. 1993) ............................................................................ 14

*Carter v. Countrywide Credit Indus., Inc.*,
362 F.3d 294 (5th Cir. 2004) ............................................................................ 16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................................... 9

*Chavez Law Offs., P.A. v. Tyler Techs., Inc.*,
2021 WL 4134847 (D.N.M., 2021) (unpublished) ......................................... 12

*Concrete Works of Colo., Inc. v. City & Cnty. of Denver*,
321 F.3d 950 (10th Cir. 2003) .......................................................................... 14

*Cone v. Longmont United Hosp. Ass'n*,
14 F.3d 526 (10th Cir. 1994) ............................................................................ 9

*Convergys Corp. v. Nat'l Lab. Rels. Board*,
866 F.3d 635 (5th Cir. 2017) ............................................................................ 16

*Cunningham v. Vivint, Inc.*,
2022 WL 2291669 (D. Utah, 2022) (unpublished) ......................................... 17

*D.R. Horton, Inc. v. NLRB*,
737 F.3d 344 (5th Cir. 2013) ............................................................................ 16

*Davis v. USA Nutra Labs*,
    303 F. Supp. 3d 1183 (D.N.M. 2018) ............................................................. 12

*DeLuca v. Royal Caribbean Cruises, Ltd.*,
    244 F. Supp. 3d 1342 (S.D. Fla. 2017) .......................................................... 16

*Demarest v. Price*,
    130 F.3d 922 (10th Cir. 1997) ........................................................................ 14

*Deposit Guar. Nat'l Bank v. Roper*,
    445 U.S. 326 (1980) ........................................................................................ 16

*Entek GRB, LLC v. Stull Ranches, LLC*,
    840 F.3d 1239 (10th Cir. 2016) ...................................................................... 14

*Epic Systems Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) .................................................................................... 15

*Feldman v. Google, Inc.*,
    513 F. Supp. 2d 229 (E.D. Pa. 2007) ............................................................. 12

*Gen. Tel. Co. of S.W. v. Falcon*,
    457 U.S. 147 (1982) ........................................................................................ 17

*Hancock v. AT&T Co.*,
    701 F.3d 1248 (10th Cir. 2012) ...................................................................... 12

*Martinez v. Capstone Rest. Grp., LLC*,
    2021 WL 1723776 (D. Colo., 2021) (unpublished) ....................................... 10

*Martinez v. Roscoe*,
    100 F.3d 121 (10th Cir. 1996) ........................................................................ 14

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .......................................................................................... 9

*Metzler v. Fed. Home Loan Bank of Topeka*,
    464 F.3d 1164 (10th Cir. 2006) ........................................................................ 9

*Miller v. Corinthian Colls., Inc.*,
    769 F. Supp. 2d 1336 (D. Utah, 2011) ...................................................... 16, 17

*O'Shaughnessy v. Young Living Essential Oils, L.C.*,
    810 F. Appx 308 (5th Cir. 2020) ...................................................................... 4

*Ordosgoitti v. Werner Enterprises, Inc.*,
    No. 8:20-CV-421, 2022 WL 874600 (D. Neb. Mar. 24, 2022) ....................... 16

*Owen v. Bristol Care, Inc.*,
    702 F.3d 1050 (8th Cir. 2012) ........................................................................ 16

*Palmer v. Convergys Corp.*,
   2012 WL 425256 (M.D. Ga., 2010) (unpublished) .............................................................. 16

*Penhall v. Young Living Essential Oils, LC*,
   2022 WL 15504063 (D. Utah, 2022) (unpublished) ...................................................... 11, 12

*Scott v. Harris*,
   550 U.S. 372 (2007) ........................................................................................................ 10

*U1it4less, Inc. v. FedEx Corp.*
   2015 WL 3916247 (S.D.N.Y. Jun. 25, 2015) ............................................................. 16, 17

*Zako v. Hamilton Co.*,
   2019 WL 320552 (D. Nev. Jan. 23, 2019) (unpublished) ................................................. 16

**Rules**

Fed. R. Civ. P. 56(a) ...................................................................................................................... 9

## I.     INTRODUCTION AND PRECISE RELIEF SOUGHT

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, Defendant Young Living Essential Oils, LC ("Young Living") moves this Court for partial summary judgment as to Plaintiff Julie O'Shaughnessy's ("Ms. O'Shaughnessy") class claims on the grounds that Ms. O'Shaughnessy contractually waived her ability to participate in a class action against Young Living by voluntarily accepting the terms of a valid and binding class action waiver.

The material facts are straightforward, unambiguous, and undisputed: Ms. O'Shaughnessy became a Young Living Member in 2015 after agreeing to Young Living's membership agreements, which included its 2014 Policies and Procedures (the "2014 P&Ps"), Member Agreement, and Compensation Plan (together, the "Agreements" or the "Membership Agreements"). On July 23, 2018, she "agree[d] to be bound by the terms and conditions" of Young Living's updated 2018 Policies and Procedures (the "2018 P&Ps") Dkt. 7-6. The 2018 P&Ps included a class action waiver that precluded Ms. O'Shaughnessy from bringing any suit against Young Living "as a plaintiff or class member in any purported class," including in "federal or state class actions." *Id.* §13.2.5. Less than a year later, on April 12, 2019, Ms. O'Shaughnessy filed this class action against Young Living in the Western District of Texas on behalf of a putative class of "well over one hundred thousand members." Dkt. 1. These undisputed facts lead to a single undisputable conclusion: Ms. O'Shaughnessy waived her right to initiate or otherwise participate in the very class action she purports to bring, and her class action claims must be dismissed.

As clear as these facts are, the enforceability of the class action waiver is equally clear. Class action waivers like the one included in the 2018 P&Ps are routinely enforced by courts across the country and are favored under Utah law. This is especially the case where a party is provided with notice and an extended period to understand the terms, as Ms. O'Shaughnessy was when Young Living provided notice of the "addition of a class action waiver" a month before the 2018

P&Ps became effective.  Ex. 3.  The terms of the class action waiver are standard, valid, and enforceable, and Ms. O'Shaughnessy was provided with sufficient notice prior to their implementation.

The Court should hold Ms. O'Shaughnessy to the unambiguous terms of the class action waiver, grant summary judgment in favor of Young Living, and dismiss Ms. O'Shaughnessy's putative class claims with prejudice.

## II.     FACTUAL BACKGROUND

On May 15, 2015, Ms. O'Shaughnessy enrolled as a Member of Young Living Essential Oils, LC ("Young Living" or the "Company") by agreeing to the terms and conditions of Young Living's Member Agreement, Compensation Plan, and 2014 P&Ps.  Ex. 1, Barrow Decl. ¶ 11.[1] Individuals like Ms. O'Shaughnessy who wish to become Young Living Members are required to agree to the terms and conditions of each of the Membership Agreements.  Ex. 1 at ¶ 5.  If a Young Living Member does not consent to the Membership Agreements or to a subsequent update to the terms and conditions of the Agreements, the Company's computer software does not permit that Member to access Young Living's Member discounts and products.  Ex. 2, Gibbons Decl.¶ 5.

When the Membership Agreements are updated, Young Living provides email notifications to its Members identifying specific updates and notifying Members of their deadline to accept the updated terms.  Ex. 1, ¶ 13.  Consistent with this practice, on July 2, 2018, Young Living sent Ms. O'Shaughnessy an email (the "July 2018 Email") notifying her that the Company was "publishing updates" to its Policies and Procedures that were "going into effect on August 1." Ex. 3, email dated July 2, 2018, from Young Living to Julie O'Shaughnessy; *see also* Ex. 1 at ¶¶ 17-18.  The July 2018 Email expressly identified "an addition of a class action waiver. (Section

---

[1]     All referenced exhibits are included in Young Living's Appendix of Exhibits in Support of Young Living's Motion for Partial Summary Judgment.

13.2.5) U.S. only*" as one of "a few of the most important updates" contained in the 2018 P&Ps. Ex. 3.  The July 2018 Email requested that Ms. O'Shaughnessy "review these updated policies before they go into effect on August 1," and provided her with hyperlinks to both the 2018 P&Ps and answers to frequently asked questions regarding any notable changes.  *Id.*  The July 2018 Email also informed Ms. O'Shaughnessy that the next time she accessed her Young Living account, she would be "prompted to read and accept the updates before [she could] proceed."  Ex. 3; Ex. 1 at ¶ 20.

On July 23, 2018, Ms. O'Shaughnessy accessed her Young Living account and was presented with the following text:

> I have read and agree to be bound by the terms and conditions of the new Agreement, effective August 1, 2018 (which includes this Member Agreement, the Policies and Procedures, Privacy Policy, and the Compensation Plan). I certify that I am 18 years old and legally able to enter into the Agreement. I understand that I have the right to terminate my Young Living Member Agreement at any time, with or without reason, by sending written notice to the Company at the above listed address.

Ex 1 at ¶¶ 21-22; Ex 2 at ¶ 9.  Directly below this text, Ms. O'Shaughnessy was presented with two hyperlinks, one of which led to the 2018 P&Ps.  Ex. 1 at ¶ 23; Ex. 2 at ¶ 10.  Directly below the text and hyperlinks, Ms. O'Shaughnessy clicked a check-box next to the words: "I have read and agree to the terms of the Young Living Essential Oils Member Agreement. *(This field is required)[.]"  Ex. 1 at ¶ 24; Ex. 2 at ¶ 12.  On July 23, 2018, Ms. O'Shaughnessy clicked a button labeled "Agree and Continue," confirming her acceptance of Young Living's 2018 P&Ps.  Ex. 1 at ¶ 25; Ex. 2 at ¶ 13.

As identified in the July 2018 Email, Section 13.2.5 of the 2018 P&Ps included the following class action waiver (the "Class Action Waiver"):

> YOU AND YOUNG LIVING AGREE THAT EACH PARTY MAY BRING DISPUTES AGAINST THE OTHER PARTY ONLY IN AN INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY

PURPORTED CLASS OR REPRESENTATIVE PROCEEDING, INCLUDING, WITHOUT LIMITATION, FEDERAL OR STATE CLASS ACTIONS OR CLASS ARBITRATIONS.

Dkt. 7-6 § 13.2.5.  Ms. O'Shaughnessy agreed to the 2018 P&Ps, including the Class Action Waiver, by accepting them through the process described above on July 23, 2018.  Ex. 1 at ¶ 26.

Ms. O'Shaughnessy subsequently purchased product through Young Living's website on August 24, 2018, and again on August 30, 2018.  Exs. 4-5; *see also* Ex. 1 at ¶ 28.  Because the Company's computer software does not permit a Member to access Young Living's Member discounts and products without agreeing to updates to the Membership Agreements, Ms. O'Shaughnessy could not have made these August purchases without first agreeing to the 2018 P&Ps and the Class Action Waiver contained therein, as she did on July 23, 2018.  Ex. 2 at ¶¶ 5, 13.

Despite having agreed to waive her right to bring a class action against Young Living, on April 12, 2019, Ms. O'Shaughnessy filed a putative class action against Young Living in the Western District of Texas (the "Action").  Dkt. 1.

Young Living subsequently moved to compel Ms. O'Shaughnessy to arbitration, and the Magistrate Judge issued a report and recommendation to the District Court that the motion should be denied.  Dkt. 29.  In her report and recommendation, the Magistrate considered whether Ms. O'Shaughnessy agreed to the 2018 P&Ps and concluded she had, finding that "Plaintiff also agreed to the 2018 Amended Agreement, which contains the same contractual terms."  *Id.* at FN 1.  The District Court approved and accepted the Magistrate's Report and Recommendation in its entirety and denied Young Living's motion. Dkt. 33.  The Fifth Circuit later affirmed the District Court's decision on appeal.  *See O'Shaughnessy v. Young Living Essential Oils, L.C.*, 810 Fed. Appx 308, 314 (5th Cir. 2020) (unpublished).

The Action was transferred to this Court on June 30, 2020, and Ms. O'Shaughnessy amended her class action complaint on January 15, 2020, and again on July 2, 2021. Dkt. 59, 75, 146. In her Second Amended Complaint (the "Complaint"), Ms. O'Shaughnessy purports to bring her claim "individually, and on behalf of all those similarly situated," and asserts "federal securities claims brought pursuant to Section 12(2) of the Securities Act of 1933, and Section 10b(5)(a) and (c) of the Securities Exchange Act of 1934" against Young Living. Dkt. 146. Ms. O'Shaughnessy's Complaint defines the putative class she seeks to represent as including "[a]ll United States residents who joined Young Living as Essential Rewards members" without any temporal limitation. *Id.* at ¶ 66. Ms. O'Shaughnessy's putative class would therefore include many individuals who, like her, accepted the 2018 P&Ps, including the Class Action Waiver. *Id.* The Complaint further represents that "the class is believed to number well over one hundred thousand members." *Id.* at ¶ 67.

Ms. O'Shaughnessy has subsequently insisted on conducting class certification discovery on behalf of a class that, according to her, includes ***all*** Young Living Members from at least 2016 ***to present***. This includes Young Living Members who, like Ms. O'Shaughnessy herself, agreed to the 2018 P&Ps and contractually waived their right to participate in this Action. But Ms. O'Shaughnessy nonetheless demands that the scope of discovery match the scope of her purported class, and that Young Living accordingly submit to expansive and burdensome discovery implicating virtually every document in Young Living's possession from 2016 to present.[2] This includes Ms. O'Shaughnessy's request to depose ten current and former Young Living employees

---

[2]     By way of example, Ms. O'Shaughnessy's recent motion to compel asks the Court to compel Young Living to produce a vast, undefined swath of documents, information, and data, including all "relevant" internal communications which Plaintiff has not tied to class discovery, notwithstanding the parties' agreement to bifurcate discovery in this case and the significant volume of documents and information Young Living has already produced. Dkt. 207.

and officers, as well as her deposition notice of Young Living's corporate representative, which covers an immensely broad panoply of topics over an even broader time period beginning "when the first Essential Rewards Member joined…Young Living's Essential Rewards program," and stretching to present. *See* Ex. 6 at schedule I, page 6. Ms. O'Shaughnessy's expansive class-related discovery also dramatically increases the scope and cost of the work performed by Young Living's class certification experts.

In light of Ms. O'Shaughnessy's undisputed waiver of her right to seek class relief, all of this expensive and wasteful class-related discovery is unnecessary. And to avoid further waste, Young Living brings this narrow challenge now, instead of waiting until November to raise this argument in opposition to Ms. O'Shaughnessy's eventual motion for class certification.[3]

### III.   STATEMENT OF UNDISPUTED MATERIAL FACTS

1. To become a Young Living Member, individuals are required to agree to the terms and conditions of Young Living's Member Agreement, Compensation Plan, and Policies & Procedures. Ex 1 at ¶ 5.

2. Similarly, to remain a Member, individuals are required to agree to any updates to the terms and conditions of Young Living's Agreements. There are no exceptions to this rule. *Id.*

3. If a Young Living Member does not consent to the Agreements or to a subsequent update to the terms and conditions of the Agreements, the Company's computer software does not permit that Member to access Young Living's Member discounts and products. Ex. 2 at ¶ 5.

4. Ms. O'Shaughnessy enrolled as a Young Living Member by agreeing to the terms and conditions of Young Living's Member Agreement, Compensation Plan, and 2014 P&Ps on May 15, 2015. Ex. 1 at ¶ 11.

---

[3]   For the avoidance of doubt, Young Living files this Motion for Partial Summary Judgment without waiving its Rule 23 arguments in opposition to Plaintiff's motion for class certification, all of which are expressly reserved.

5.      Young Living updated its Policies and Procedures in 2018. The 2018 P&Ps became effective on August 1, 2018.  *Id.* at ¶ 15.

6.      Nearly one month prior to the 2018 P&Ps becoming effective, Young Living sent Ms. O'Shaughnessy an email on July 2, 2018, notifying her that it was "publishing updates to [its] Policies and Procedures, going into effect on August 1."  Ex. 3; *see also* Ex. 1 at ¶ 17.

7.      The July 2018 Email provided Ms. O'Shaughnessy with hyperlinks to both the 2018 P&Ps, as well as questions and answers "outlining the most notable changes."  Ex. 3; Ex. 1 at ¶ 19.

8.      The July 2018 Email also informed Ms. O'Shaughnessy that one of the updates in the 2018 P&Ps was the "addition of a class action waiver."  *Id.*

9.      The July 2018 Email also informed Ms. O'Shaughnessy that the next time she accessed her Young Living account, she would be "prompted to read and accept the updates before [she could] proceed."  Ex. 3; Ex. 1 at ¶ 20.

10.     On July 23, 2018, Ms. O'Shaughnessy accessed her Young Living account.  Ex. 1 at ¶ 21; Ex. 2 at ¶ 9.

11.     Upon accessing her account on July 23, 2018, Ms. O'Shaughnessy was presented with the following text:

> I have read and agree to be bound by the terms and conditions of the new Agreement, effective August 1, 2018 (which includes this Member Agreement, the Policies and Procedures, Privacy Policy, and the Compensation Plan). I certify that I am 18 years old and legally able to enter into the Agreement. I understand that I have the right to terminate my Young Living Member Agreement at any time, with or without reason, by sending written notice to the Company at the above listed address.

> Ex. 1 at ¶ 22; Ex. 2 at ¶ 9.

12.     Directly below this text, Ms. O'Shaughnessy was presented with two hyperlinks, one of which led to the 2018 P&Ps.  Ex. 1 at ¶ 23; Ex. 2 at ¶ 10.

13.     Young Living's 2018 P&Ps contained the following Class Action Waiver:

YOU AND YOUNG LIVING AGREE THAT EACH PARTY MAY BRING DISPUTES AGAINST THE OTHER PARTY ONLY IN AN INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING, INCLUDING, WITHOUT LIMITATION, FEDERAL OR STATE CLASS ACTIONS OR CLASS ARBITRATIONS.

Dkt. 7-6 § 13.2.5.

14.     Young Living's 2018 P&Ps also contain the following severability clause:

If any provision of the Agreement, in its current form or as it may be amended, is found to be invalid or unenforceable for any reason, only the invalid portion(s) of the provision will be severed. The remaining terms and conditions will remain in full force and effect and will be construed as if such invalid or unenforceable provision never comprised a part of the Agreement.

Dkt. 7-6 § 15.2.

15.     Directly below the text and hyperlinks, Ms. O'Shaughnessy clicked a check-box next to the words: "I have read and agree to the terms of the Young Living Essential Oils Member Agreement. *(This field is required)[.]"  Ex. 1 at ¶ 24; Ex. 2 at ¶ 12.

16.     Ms. O'Shaughnessy then clicked a button labeled "Agree and Continue," confirming her acceptance of Young Living's 2018 P&Ps.  Ex. 1 at ¶ 25; *see also* Ex. 2 at ¶ 13.

17.     Ms. O'Shaughnessy agreed to the 2018 P&Ps on July 23, 2018 through the clickwrap agreement described above.  Ex. 1 at ¶ 26.

18.     After agreeing to the 2018 P&Ps, on August 24, 2018, Ms. O'Shaughnessy purchased product through Young Living's website.  Ex. 4; *see also* Ex. 1 at ¶ 28.

19.     On August 30, 2018, Ms. O'Shaughnessy again purchased product through Young Living's website.  Ex. 5; *see also* Ex. 1 at ¶ 28.

20.     Ms. O'Shaughnessy filed this class action lawsuit in the Western District of Texas on April 12, 2019.  Dkt. 1.

21.     Ms. O'Shaughnessy amended her class action complaint in this Action on January 15, 2020, and again on July 2, 2021.  Dkt. 59, 146.

22.     Ms. O'Shaughnessy is the plaintiff and putative class representative in this Action. Dkt. 1, 59, 146.

23.     Ms. O'Shaughnessy's Second Amended Complaint defines the putative class as "[a]ll United States residents who joined Young Living as Essential Rewards members."  Dkt. 146 at ¶ 66.

## IV.    LEGAL STANDARD

The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment shall be granted as to all or part of a claim when the movant shows, based on admissible evidence in the record placed before the Court, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only genuine disputes relating to *material* facts—"facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To defeat summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory allegations without supporting evidence do not raise a genuine dispute of material fact, especially in light of other evidence in the record. *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1178 (10th Cir. 2006); *see Annett v. Univ. of Kansas*, 371 F.3d 1233, 1237 (10th Cir. 2004) ("Unsupported conclusory

allegations . . . do not create a genuine issue of fact."); *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir. 1994) (providing that "allegations alone will not defeat summary judgment"). "Speculative arguments" and "lack of recall" are also "not enough to raise a genuine dispute[.]" *Martinez v. Capstone Rest. Grp., LLC*, 2021 WL 1723776 (D. Colo., 2021) (unpublished). Further, the Court should not accept evidence presented by the nonmoving party that is so "blatantly contradicted by the record . . . that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## V.    ARGUMENT

The Court should dismiss Ms. O'Shaughnessy's class action claims in this case because it is undisputed that she agreed to the 2018 P&Ps and the Class Action Waiver contained therein, and in doing so she waived her right to bring or maintain any class claims against Young Living. Only a very narrow set of facts are material to this issue, and none are in dispute:

- As a Young Living Member, Ms. O'Shaughnessy was required to accept the terms and conditions of Young Living's Membership Agreements and any updates. Ex. 1 at ¶ 5; Ex. 2 at ¶ 5.

- Young Living's 2018 P&Ps became effective August 1, 2018 and contained a class action waiver. Ex. 1 at ¶ 15; Dkt. 7-6 § 13.2.5.

- Ms. O'Shaughnessy was provided with notice and an opportunity to review the updated terms and conditions, including the class action waiver, a month before the 2018 P&Ps became effective. Ex. 1 at ¶ 17; Ex. 3.

- Ms. O'Shaughnessy accepted the terms and conditions contained in the 2018 P&Ps through a clickwrap agreement on July 23, 2018, acknowledging that she would not bring any lawsuit "as a plaintiff or class member in any purported class or representative proceeding" including any "federal or state class actions." Ex. 1 at ¶ 26; Ex. 2 at ¶ 13; Dkt. 7-6 § 13.2.5.

That Ms. O'Shaughnessy's accepted and agreed to the 2018 P&Ps is also established as the law of the case, based on the Court's earlier ruling that she agreed to these terms. Dkt. 29, 33. This finding is dispositive.

The Class Action Waiver is valid and enforceable and, importantly, does not preclude Ms. O'Shaughnessy from asserting any claims at all. To the contrary, it expressly allows Ms. O'Shaughnessy to "bring disputes against [Young Living] only in an individual capacity." Dkt. 7-6 §13.2.5. Utah courts favor the enforcement of class action waivers like this one—where the plaintiff is provided with sufficient notice and is not left without legal recourse. The Class Action Waiver itself is standard and nearly identical to class action waivers that federal courts in Utah and across the country routinely enforce. The legal impact of these facts is clear: Ms. O'Shaughnessy's class claims are foreclosed, and her Action can proceed only on an individual basis.

### A.   No Genuine Dispute of Material Fact Exists that Ms. O'Shaughnessy Accepted the 2018 P&Ps.

There is no genuine dispute of material fact that Ms. O'Shaughnessy accepted the terms and conditions of the 2018 P&Ps through a clickwrap agreement. To the contrary, declarations submitted herewith confirm this as a fact, as do the orders placed by Ms. O'Shaughnessy after the 2018 P&Ps became effective on August 1, 2018. *See* Ex. 1 at ¶ 26; Ex. 2 at ¶ 13; Exs. 4-5. And there is no genuine dispute that the clickwrap agreement through which Ms. O'Shaughnessy agreed to the 2018 P&Ps is valid and binding, as Judge Barlow recently affirmed in an October 2022 decision in *Penhall v. Young Living Essential Oils, LC*, 2022 WL 15504063 (D. Utah, 2022) (unpublished). In *Penhall*, Judge Barlow considered the validity of Young Living's clickwrap agreement as it appeared in 2020[4] and carefully analyzed each step of the process before holding that the Young Living's "clickwrap agreement was valid." *Id.* at *6. In reaching this decision, Judge Barlow examined facts nearly identical to those in this case, including that the plaintiff "was presented with a clickwrap agreement containing hyperlinks to the 2019 Member Agreement and the 2020 P&Ps," she then "checked the box indicating that she had read and understood the

---

[4] Young Living's clickwrap agreement remained substantially the same between 2014 and 2020. *See* Ex. 1. ¶ 9.

Agreement," and she accepted the P&Ps "by clicking on a checkbox." *Id.* at *6.  Based on this evidence, Judge Barlow rightly concluded that the plaintiff "had an opportunity to review the revised agreements before affirmatively accepting the terms and conditions." *Id.* at *6.  This led Judge Barlow to conclude "as a matter of law that Young Living gave Ms. Penhall adequate notice." *Id.* at *6.  Finally, because she affirmatively clicked a button manifesting assent, the Court concluded that "there is no dispute of material fact that she had notice of and manifested her assent" to the arbitration agreement contained in the 2020 P&Ps.  *Id.* at *6.

As Judge Barlow observed, clickwrap agreements "are increasingly common and 'have routinely been upheld.'"  *Penhall*, 2022 WL 15504063, at *4, (quoting *Hancock v. AT&T Co.*, 701 F.3d 1248, 1256 (10th Cir. 2012)).  Indeed, "[f]ederal courts have consistently enforced clauses contained in clickwrap agreements…where the agreement is 'presented via a hyperlink to a page separate from the one containing the box or button manifesting assent.'"  *Davis v. USA Nutra Labs*, 303 F. Supp. 3d 1183, 1190–91 (D.N.M. 2018) (quoting *Bassett v. Elec. Arts Inc.*, 2015 WL 1298644, at *4 (E.D.N.Y., 2015)).  The Tenth Circuit has found that "basic contract law principles . . . indicate that if a clickwrap agreement gives a consumer reasonable notice of its terms and the consumer affirmatively manifests assent to the terms, the consumer is bound by the terms." *Hancock*, 701 F.3d at 1256; *see Chavez Law Offs., P.A. v. Tyler Techs., Inc.*, 2021 WL 4134847, at *5 (D.N.M., 2021) (unpublished) (quoting *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007)).  This binding precedent makes clear that Ms. O'Shaughnessy agreed to and is bound by the 2018 P&Ps through Young Living's clickwrap agreement.

This case concerns only a slightly earlier version of the same clickwrap agreement and related process the Court found to be valid in *Penhall*, and the same result follows.  On July 23, 2018, Ms. O'Shaughnessy took each of the same steps in agreeing to the 2018 P&Ps, including

that she was presented with a clickwrap agreement containing a hyperlink to the 2018 P&Ps, clicked a check-box next to the words: "I have read and agree to the terms of the Young Living Essential Oils Member Agreement. *(This field is required)" and clicked a button labeled "Agree and Continue," thus confirming her acceptance of Young Living's 2018 P&Ps. Ex. 1 at ¶ 24; Ex. 2 at ¶ 12.  It follows, then, that just as Judge Barlow found that Penhall had "notice of and manifested her assent" to the terms of the 2020 P&Ps, so too Ms. O'Shaughnessy had equally sufficient notice of and manifested her assent to the terms of the 2018 P&Ps, including the Class Action Waiver contained therein.  That Ms. O'Shaughnessy accepted Young Living's 2018 P&Ps is evidenced not only in membership data and records referenced by Mr. Barrow and Mr. Gibbons, but also in documents produced by Ms. O'Shaughnessy herself, which reflect that she purchased Young Living product through Young Living's website on August 24 and August 30, 2018. Ex. 1 at ¶ 28; Exs. 4-5.  As a Young Living Member, Ms. O'Shaughnessy would not have been able to make these purchases without first agreeing to the 2018 P&Ps, as she did on July 23, 2018. Ex. 1 at ¶ 28; Ex. 2 at ¶ 5.

Though the clickwrap process itself was sufficient to notify Ms. O'Shaughnessy of the 2018 P&Ps and bind her to them, Young Living also provided Ms. O'Shaughnessy with notice of the 2018 P&Ps and the included Class Action Waiver on July 2, 2018, as well as a month-long opportunity to review those and other changes prior to agreeing to them.  Indeed, the email—an authentic copy of which was produced by Ms. O'Shaughnessy herself—could not have been clearer about the fact that the 2018 P&Ps included the "addition of a class action waiver." Ex. 3. The email even requested that Ms. O'Shaughnessy review the changes in full prior to their effective date and provided a hyperlink to the 2018 P&Ps, as well as questions and answers regarding the most notable changes, to facilitate her review. *See id*.  Young Living also offered to answer by

email any questions Ms. O'Shaughnessy might have about the changes. *See id*. In short, Ms. O'Shaughnessy received more than sufficient notice of the 2018 P&Ps and their material terms and agreed to them before they became effective on August 1, 2018.

These facts are undisputed—as demonstrated both by Young Living's internal records and by the records that Ms. O'Shaughnessy herself produced in this Action, including the July 2018 Email—and the evidence demonstrates conclusively that Ms. O'Shaughnessy assented to the 2018 P&Ps and is thus bound by their terms, including the Class Action Waiver contained therein. Ex. 1 at ¶ 26; Ex. 2 at ¶ 13; Ex. 3.

**B.     Ms. O'Shaughnessy's Acceptance of the 2018 P&Ps is Established as the Law of the Case.**

The Court conclusively established Ms. O'Shaughnessy's acceptance of the 2018 P&Ps when it examined the issue nearly four years ago and concluded that "Plaintiff also agreed to the 2018 Amended Agreement, which contains the same contractual terms." Dkt. 29, at FN 1. To support its conclusion, the Court specifically cited to Young Living's briefing and argument that Ms. O'Shaughnessy agreed to the 2018 P&Ps, leaving no doubt about the Court's conclusion. Plaintiff chose not to appeal or otherwise challenge the finding that she accepted the 2018 P&Ps, and the Court's conclusion was affirmed by the Fifth Circuit. The fact that Ms. O'Shaughnessy agreed to the 2018 P&Ps is thus now established as the law of the case.

Under this circuit's law of the case doctrine, "[a] legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." *Capps v. Sullivan,* 13 F.3d 350, 353 (10th Cir. 1993) (quotation omitted); *see also Demarest v. Price,* 130 F.3d 922, 942 n. 9 (10th Cir. 1997); *Martinez v. Roscoe,* 100 F.3d 121, 123 (10th Cir. 1996). *Entek GRB, LLC v. Stull Ranches,*

*LLC*, 840 F.3d 1239, 1242 (10th Cir. 2016) (citing *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 321 F.3d 950, 992 (10th Cir. 2003)).  This rule is "necessary to the orderly conduct of litigation." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 321 F.3d 950, 992 (10th Cir. 2003).  Here, Ms. O'Shaughnessy did not appeal or otherwise challenge this decision, and as a result she has waived the right to challenge it.  The Court's previous final ruling alone is dispositive that Ms. O'Shaughnessy is bound by the 2018 P&Ps and the Class Action Waiver contained therein.  Dkts. 29, 33.

### C.    The Class Action Waiver is Binding and Enforceable.

When Ms. O'Shaughnessy accepted and agreed to the 2018 P&Ps on July 23, 2018, she also agreed to the Class Action Waiver, which by its plain language precludes Ms. O'Shaughnessy from bringing claims as a representative of a class:

> YOU AND YOUNG LIVING AGREE THAT EACH PARTY MAY BRING DISPUTES AGAINST THE OTHER PARTY ONLY IN AN INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING, INCLUDING, WITHOUT LIMITATION, FEDERAL OR STATE CLASS ACTIONS OR CLASS ARBITRATIONS.

Ex. 1 at ¶ 26; Dkt. 7-6 §13.2.5.  Courts nationwide, including the United States Supreme Court, have held that similar language is valid and enforceable and precludes a plaintiff from bringing claims on a class-wide basis.  Ms. O'Shaughnessy's class claims fall directly within the scope of the above Class Action Waiver, and so the claims she purports to bring as the representative of a putative class should be dismissed.

The Supreme Court has repeatedly held that contractual provisions requiring individual litigation—and waiving class or collective action litigation—are enforceable. In *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018), the Court upheld contractual provisions requiring "individualized rather than class or collective action procedures." The Court reached the same

conclusion in *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232-35 (2013), and *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339-552 (2011), both of which enforced contractual class action waivers and held that the plaintiffs were bound by their agreements to try legal disputes individually rather than collectively or in a class proceeding.  As the Supreme Court stated, Rule 23 of the Federal Rules of Civil Procedure does not "establish an entitlement to class proceedings for the vindication of statutory rights." *Italian Colors Rest.*, 570 U.S. at 234.

Multiple courts, including this Court, have held that a litigant's ability to bring class or representative claims is a procedural right—not a substantive right—and may be waived by the litigant just like any other procedural right. *See, e.g.*, *Miller v. Corinthian Colls., Inc.*, 769 F. Supp. 2d 1336, 1348-49 (D. Utah, 2011); *Convergys Corp. v. Nat'l Lab. Rels. Board,* 866 F.3d 635 (5th Cir. 2017); *D.R. Horton, Inc. v. NLRB,* 737 F.3d 344, 357 (5th Cir. 2013); *Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 332 (1980).  In *Miller v. Corinthian Colls., Inc.*, this Court applied traditional contract law principles to enforce a class action waiver provision contained in a written agreement.  Courts in other districts have reached the same conclusion, finding "it is well-established that parties can agree to class action waivers." *DeLuca v. Royal Caribbean Cruises, Ltd.*, 244 F. Supp. 3d 1342, 1346 (S.D. Fla. 2017); *see also U1it4less, Inc. v. FedEx Corp*. 2015 WL 3916247, *3-5 (S.D.N.Y. Jun. 25, 2015) (citing *Italian Colors* and holding that "it is clear the class action waiver of the [parties' agreement] is enforceable here") (unpublished).  Courts also have not hesitated to enforce such waivers in the context of FLSA collective actions.  *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004); *Zako v. Hamilton Co.*, 2019 WL 320552, *3 (D. Nev., 2019) (unpublished); *Palmer v. Convergys Corp.*, 2012 WL 425256, *2-3 (M.D. Ga., 2010) (unpublished); *Ordosgoitti v. Werner Enterprises, Inc.*, No. 8:20-CV-421, 2022 WL 874600, at *3 (D. Neb., 2022) (granting motion for partial summary judgment and

enforcing a class action waiver as to the plaintiff's class action claims); *Owen v. Bristol Care, Inc.,* 702 F.3d 1050, 1053 (8th Cir. 2012) (stating "[e]ven assuming Congress intended to create some 'right' to class actions, if an employee must affirmatively opt in to any such class action, surely the employee has the power to waive participation in a class action as well.").

Class action waivers like the one included in the 2018 P&Ps are enforceable and favored under Utah law. *Miller,* 769 F. Supp. 2d, at 1348. The Class Action Waiver at issue is standard in form and not materially different from the waiver the Supreme Court held was enforceable in *Italian Colors Rest.,* 570 U.S. at 236–37. *See also U1it4less, Inc.*, 2015 WL 3916247 (S.D.N.Y., 2015) (unpublished) (granting defendants' motion for partial summary judgment as to plaintiff's class claims based on a similar valid class action waiver).

The substantial and binding precedent is dispositive here. The Class Action Waiver contained in the 2018 P&Ps is valid and binding, and Ms. O'Shaughnessy is indisputably bound by its terms and foreclosed from maintaining her class action claims. Notably, although her class claims are subject to dismissal, Ms. O'Shaughnessy is not left without an effective legal remedy. If she wishes, she may still proceed against Young Living in her individual capacity consistent with federal law. *See Gen. Tel. Co. of S.W. v. Falcon,* 457 U.S. 147, 155 (1982) (citing *Califano v. Yamasaki,* 442 U.S. 682, 700–701 (1979)) ("The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"); *Cunningham v. Vivint, Inc.*, 2022 WL 2291669, at *5 (D. Utah, 2022) (unpublished) (same). For this reason, an order dismissing Ms. O'Shaughnessy's class claims will not preclude her from seeking relief. Instead, such an order would simply hold Ms. O'Shaughnessy to the clear and unambiguous terms of the enforceable Class Action Waiver to which she agreed.

Ultimately, the factual record is clear and undisputed: Ms. O'Shaughnessy agreed to and is bound by the terms and conditions of the 2018 P&Ps, including the valid and binding Class Action Waiver contained in Section 13.2.5 of the 2018 P&Ps.  This Court should enforce the clear and unambiguous terms of the parties' agreement by dismissing Ms. O'Shaughnessy's class action claims against Young Living.

## VI.    CONCLUSION

For the foregoing reasons, Young Living respectfully requests that the Court grant this Motion for Partial Summary Judgment dismiss Ms. O'Shaughnessy's class claims and allow the suit to proceed on her individual claims, only.


DATED: July 5th, 2023

/s/ *Jon David Kelley*
Jeremy A. Fielding (*pro hac vice*)
Jon David Kelley (*pro hac vice*)
Rachael A. Rezabek (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
4550 Travis Street
Dallas, Texas 75205
Phone: 214-972-1770
Fax: 214-972-1771
jeremy.fielding@kirkland.com
jon.kelley@kirkland.com
rachael.rezabek@kirkland.com

Stefan H. Atkinson (*pro hac vice*)
Christopher X. Fernandez (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
Phone: 212-446-4803
Fax: 212-446-4900
stefan.atkinson@kirkland.com
christopher.fernandez@kirkland.com

Jess M. Krannich (Utah Bar No. 14398)
**KIRKLAND & ELLIS LLP**
95 South State Street

Salt Lake City, UT 84111
Phone: 801-877-8100
Fax: 801-877-8101
jess.krannich@kirkland.com

Robert S. Clark
Jeffrey J. Hunt
David C. Reymann
Bryan S. Johansen
**PARR BROWN GEE & LOVELESS**
101 S 200 E Ste 700
Salt Lake City, Utah 84111
Phone: 801-532-7840
Fax: 801-532-7750
rclark@parrbrown.com
jhunt@parrbrown.com
dreymann@parrbrown.com
bjohansen@parrbrown.com

*Attorneys for Defendant*

19

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th of July, 2023, the foregoing **DEFENDANT YOUNG LIVING ESSENTIAL OILS' MOTION FOR PARTIAL SUMMARY JUDGMENT** was filed via the Court's ECF/CM filing system, which electronically served all counsel of record.


/s/ *Jon David Kelley*